**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Diane ALLISON, Defendant–Appellant.**

**No. 94–1791.**

United States Court of Appeals,
Sixth Circuit.

Argued May 15, 1995.

Decided July 19, 1995.

---

David Debold, Office of the U.S. Atty., Detroit, MI (argued and briefed), for plaintiff-appellee.

Rita Chastang, Federal Public Defenders Office, Detroit, MI (argued and briefed), Robert E. Caron, Troy, MI, for defendant-appellant.

Before: CONTIE, MILBURN, and SILER, Circuit Judges.

CONTIE, Circuit Judge.

Diane Allison appeals the district court's sentencing determinations. We affirm.

## I.

Defendant-appellant Diane Allison ("Allison") worked for Provident Life and Accident Insurance Company ("Provident") in their Southfield, Michigan, office. In 1990, Allison was promoted to the position of cashier where her responsibilities included drafting checks to be mailed out to creditors and reconciling the bank statements after the cancelled checks were returned to Provident by the bank. Within a few months of her promotion, Allison devised a scheme to alter the names of the payees on company checks (using a correction feature on her typewriter) after they were signed by a Provident executive. Allison typed her name, and the names of people she owed money to, as the new payees. When the bank returned the cancelled checks to Provident, Allison used her position (and typewriter) to change the names on the checks back to the proper payees. Accordingly, when Allison mailed the bank statements and cancelled checks to Provident's home office in Tennessee, her criminal actions were concealed.

Allison's scheme continued without interruption for approximately 21 months and resulted in a loss of $454,477.82. When a bank teller noticed alterations on a Provident check made payable to Allison and tried to notify Allison's supervisor, Allison disconnected the call and, pretending to be the Provident supervisor, called the bank back to assure them that the check was authorized. The bank employee was not fooled and Allison's scheme soon unravelled.

Allison was charged in a thirty-five count indictment with mail fraud (Counts 1–34) and bank fraud (Count 35). Prior to trial, Allison and the government entered into a plea agreement wherein the parties agreed that Allison's guideline range would be 33–41 months. Specifically, the parties agreed that: the two-level enhancement for abuse of a position of trust was applicable; Allison was entitled to a three-level reduction for acceptance of responsibility; the sentence would not exceed the midpoint of the guideline range; and, Allison would not appeal the accuracy of any sentencing factor stipulated to by the parties.

After pleading guilty, Allison retained new counsel. The new attorney objected to the two-level abuse of a position of trust enhancement. Though Allison's objections were untimely, the district court considered, and rejected, the merits of her objections. The district court subsequently sentenced Allison to 37 months imprisonment (the midpoint of the guideline range) in accordance with the plea agreement, and ordered full restitution to the victim, Provident. Allison timely appealed.

## II.

### *Abuse of Position of Trust*

In addition to a base offense level of six (pursuant to U.S.S.G. § 2F1.1(a)), the plea agreement added: nine points to Allison's offense level for the amount of loss (pursuant to U.S.S.G. § 2F1.1(b)(1)(J)); two points for more than minimal planning (pursuant to U.S.S.G. § 2F1.1(b)(2)(A)); and, two points for abuse of a position of trust (pursuant to U.S.S.G. § 3B1.3). On June 28, 1994, the district court accepted the plea agreement, rejected Allison's objections to the presentence report, sentenced Allison to 37 months imprisonment, and ordered Allison to make full restitution.

On appeal, Allison argues:

The fact that one is able through planning, scheming or manipulation, to deceive ones supervisors so as to avoid detection of embezzlement, does not turn a position into one of trust under the guidelines. To qualify under the guidelines, one must be in a position of trust with significant, i.e., managerial or professional discretion which makes commission of the offense easier. It is the "position of trust," not as the term is commonly understood, but as it is defined in the guidelines, which triggers application of 3B1.3. Appellant was not in a professional or managerial position within the meaning of § 3B1.3.

No evidence was introduced at sentencing which supported application of U.S.S.G. § 3B1.3 in Appellant's case. As such, the sentencing court erred by overruling Appellant's objection to application of this section of the guidelines. Because the court incorrectly applied the guidelines in this case, Appellant's case should be remanded for resentencing.

Appellant's Brief at 8 (footnote omitted).

In response, the United States asserts that Allison may not challenge the abuse of position of trust enhancement on appeal because she stipulated to it and waived her right to appeal its applicability. Moreover, the United States asserts that "on the merits it was proper for the court to apply the enhancement in this case." Appellee's Brief at 5.

Allison's plea agreement with the government provided (in relevant part):

1. *GUILTY PLEA*

Defendant shall enter a plea of guilty to *Count One of the Indictment.*

2. *SENTENCE*

A. *Sentencing Guidelines*

Pursuant to Rule 11(e)(1)(B) of the Federal Rules of Criminal Procedure, the parties have agreed, as indicated on the worksheets attached to this plea agreement, on the factors to be considered in calculating the appropriate guideline range under the federal Sentencing Guidelines. . . .

The parties agree that all Sentencing Guidelines provisions that might affect defendant's guideline range have been identified in this plea agreement (which includes the attached worksheets), and that the parties will rely on no other Sentencing Guidelines provisions.

. . . .

D. *Sentence Agreement*

Pursuant to Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure, the parties agree that any sentence of imprisonment shall not exceed *the midpoint of the guideline range the Court finds applicable.* Unless the Court determines that defendant will not reasonably be able to pay a fine, or that paying a fine will unduly burden any of defendant's dependents, a fine shall be imposed. *There is no agreement as to the amount of the fine.* . . .

. . . .

H. *Restitution*

In addition to imposing a fine, the Court . . . may order defendant to pay restitution to any victim of his offense(s) in an amount equal to the loss suffered by the victim. Pursuant to 18 U.S.C. § 3663(a)(3), the parties agree that the Court may order restitution *in any amount not exceeding $454,477.82.*

. . . .

4. *DISMISSED COUNTS*

Pursuant to Rule 11(e)(1)(A) of the Federal Rules of Criminal Procedure, the government will dismiss *Counts Two through 35 of the Indictment.*

## 5. WAIVER OF APPEAL

Defendant agrees not to appeal or otherwise challenge the constitutionality or legality of the Sentencing Guidelines. Defendant agrees not to appeal the accuracy of any factor stipulated to by the parties in the attached worksheets.

Rule 11 Plea Agreement at 1–7 (emphasis in original). One of the worksheets attached to the plea agreement, "WORKSHEET A (Offense Level)," provides that Allison's offense level should be increased by two levels pursuant to U.S.S.G. § 3B1.3, "Abuse of Position of Trust or Use of Special Skill."[1]

In *United States v. Ashe*, 47 F.3d 770 (6th Cir.1995), *petition for cert. filed*, (U.S. June 26, 1995) (No. 94–9835), this court held:

Initially, it should be noted that Daughtrey's plea agreement waived his right to contest any aspect of his sentencing.... Any right, even a constitutional right, may be surrendered in a plea agreement if that waiver was made knowingly and voluntarily. This reviewing court finds no clear error in the district court's finding that Daughtrey understood the terms of the plea agreement when he voluntarily executed it, and therefore he cannot be excused from the plain meaning of that contract.

*Id.* at 775–76 (citations omitted). *See also United States v. Marshall*, 996 F.2d 1218 (6th Cir.1993) (unpublished) (Batchelder, J., concurring) ("[T]he defendant in this case not only entered into the plea agreement recited in the majority opinion, but specifically agreed, as part of that plea agreement, that he waived the right to appeal his sentence. Because the defendant presents nothing to this court which would tend to demonstrate that the plea agreement itself is invalid, or that the facts contained in the presentence report and relied upon by the district court were not those upon which the plea agreement was based, I would hold that the defendant has waived his right to appeal his sentence. Such a holding has been expressly approved in other circuits, and has been approved in dicta from this circuit.").

■ As part of the plea bargaining process, both Allison and the United States compromised to obtain the benefits of the plea agreement. Specifically, the United States agreed to a three-level reduction for acceptance of responsibility and assured Allison that her sentence would not exceed the midpoint of her sentencing guideline range. Allison, in turn, agreed: to pay restitution "in any amount not exceeding $454,477.82"; that her crime involved more than minimal planning; and, that she abused a position of trust to defraud Provident. By appealing an issue that she stipulated to and agreed not to contest, Allison is attempting to void the plea agreement in violation of *Ashe*. *See also United States v. Mandell*, 905 F.2d 970, 972 (6th Cir.1990) ("[O]nce the district court accepts the plea agreement, it is bound by the bargain."). Accordingly, we find that Allison waived her right to appeal the abuse of a position of trust enhancement.

■ Moreover, were we to address the issue, we would reject Allison's claim because she occupied a position of trust that allowed her to alter checks and conceal her actions. Allison was the last Provident employee to handle the checks after they were signed, the first Provident employee to examine the cancelled checks after the bank returned them to the company, and the person responsible for reconciling Provident's checking account. Indeed, it is highly unlikely that anybody else at Provident could have committed, and concealed, this crime. Accordingly, the district court properly determined that Allison abused a position of trust.

### Ineffective Assistance of Counsel

Allison argues that her trial counsel rendered ineffective assistance by recommend-

---

1. The Sentencing Guidelines provide:

    If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic. If this adjustment is based upon an abuse of a position of trust, it may be employed in addition to an adjustment under § 3B1.1 (Aggravating Role); if this adjustment is based solely on the use of a special skill, it may not be employed in addition to an adjustment under § 3B1.1 (Aggravating Role)."

    U.S.S.G. § 3B1.3.

ing that she stipulate to, and waive her right to appeal, the abuse of a position of trust enhancement.[2] Allison failed to raise this issue in district court.

■ "Generally, this court will not review an ineffective assistance of counsel claim raised for the first time on direct appeal because the record has not been sufficiently developed for assessing the merits of the allegation." *United States v. Goodlett,* 3 F.3d 976, 980 (6th Cir.1993) (citations omitted). Indeed, the sparse record before this court does not reveal whether the attorney's actions could be considered sound trial strategy. Because "a defendant must make more than merely speculative assertions," *Bowen v. Foltz,* 763 F.2d 191, 194 (6th Cir.1985), and because the record has not been adequately developed, we will not consider the merits of Allison's ineffective assistance of counsel claim on direct appeal. The district court is the better forum for initial review of this claim in a post-conviction proceeding pursuant to 28 U.S.C. § 2255.

### Restitution

The parties agreed that the amount of loss suffered by Provident in this action was $454,477.82. The district court ordered that Allison pay restitution in that amount; Allison did not object to the district court's restitution order. On appeal, Allison argues that "[r]estitution should not be punitive and should not be imposed where the defendant has no realistic opportunity to pay it.... Thus, the order for restitution in this case was plain error for which Appellant's case should be remanded for resentencing." Appellant's Brief at 12.

> In response, the United States asserts: In the plea agreement, defendant acknowledged that the court could order restitution in an amount up to $454,477.82. The presentence report informed her that a restitution order was applicable in this case. The report states that she is proba-

bly unable to pay a fine, but it makes no such statement with respect to restitution. Defendant never objected to the report, never argued in opposition to restitution, and never objected after the court announced that restitution would be part of the sentence.

Appellee's Brief at 15 (citations omitted).

■ Pursuant to the plea agreement, Allison agreed to pay restitution in an amount not exceeding $454,477.82, and agreed not to appeal "the accuracy of any factor stipulated to by the parties." Accordingly, Allison waived her right to appeal the district court's order of restitution. Moreover, were we to address the issue, we would affirm the district court's order.

■ Though the burden of proving a victim's loss is on the government, "[t]he burden of demonstrating the financial resources of the defendant and the financial needs of the defendant and such defendant's dependents shall be on the defendant." 18 U.S.C. § 3664(d). In determining whether to order restitution and the amount to be repaid, the court must "consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3664(a). Moreover, a sentencing court is not required to make factual findings regarding a defendant's ability to pay because ability to pay is only one factor to consider when ordering restitution. *United States v. Blanchard,* 9 F.3d 22, 25 (6th Cir.1993).

Because the district court did not err by ordering restitution, we reject Allison's third assignment of error.

We therefore AFFIRM.

2. In order to succeed on an ineffective assistance of counsel claim, a defendant must establish that: "(1) his counsel's performance was constitutionally deficient; and (2) the prejudice resulting from his counsel's errors deprived him of a fair hearing." *Lynott v. Story,* 929 F.2d 228, 232 (6th Cir.1991) (citations omitted). To prove prejudice, the defendant "must show that had it not been for his counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citations omitted).