104 F.3d 361
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dionicio VALDEZ and Omar Paz-Zamudia, Defendants-Appellants.
 No. 95-1011, 95-1113.
 United States Court of Appeals, Sixth Circuit.
 Dec. 17, 1996.
 
 Before: SILER, KEITH, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants Dionicio Valdez and Omar Paz-Zamudia appeal the sentences entered by the district court on their guilty pleas to conspiracy to possess with intent to distribute controlled substances. They raise a number of issues primarily pertaining to their sentencing guideline ranges. For the following reasons, we AFFIRM the district court.
 
 I.
 
 2
 Valdez and Paz-Zamudia, and several others,[1] were involved in a large-scale heroin and cocaine distribution network operating through the Michigan prison system. Pursuant to a Federal Criminal Rule of Procedure 11 ("Rule 11") plea agreement, Valdez pleaded guilty to conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846. In this agreement, Valdez and the government stipulated to all of the relevant sentencing factors, including the application of a role-in-the-offense adjustment under USSG § 3B1.1(c). The government also agreed to make a motion for a downward departure pursuant to USSG § 5K1.1, if Valdez substantially assisted the government. At sentencing, the district court accepted the plea agreement, granted the downward departure motion, and sentenced Valdez to 148 months, below the guideline range of 188-235 months.
 
 
 3
 Paz-Zamudia also pleaded guilty to conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846. He elected to plead without a Rule 11 plea agreement. At sentencing, the court offered Paz-Zamudia an evidentiary hearing on any disputed issue, including the issues of drug quantity and his role in the conspiracy. He declined an evidentiary hearing on any issue. He also failed to make any objections to the presentence investigative report ("PSI"). The court, therefore, accepted the guideline calculations in the PSI and sentenced Paz-Zamudia to 151 months, at the bottom of the guideline range.
 
 II.
 
 4
 A defendant waives his right to appeal sentencing guideline issues specifically covered by his plea agreement. United States v. Allison, 59 F.3d 43, 46 (6th Cir.), cert. denied, 116 S.Ct. 548 (1995). In his Rule 11 agreement, Valdez stipulated to a two-point managerial enhancement under USSG § 3B1.1(c). He also expressly waived any right to appeal any guideline issue. Consequently, Valdez's decision to proceed under the Rule 11 agreement constitutes a waiver of his objection to the enhancement. United States v. Nagi, 947 F.2d 211, 214 (6th Cir.1991) ("[Defendants] may not now argue on appeal that the district court erred in following that course urged by their respective counsel in the trial court."), cert. denied, 112 S.Ct. 2309 (1992).
 
 III.
 
 5
 When a defendant fails to object to an error at sentencing, he waives his right to assert the error on appeal. United States v. Cullens, 67 F.3d 123, 124 (6th Cir.1995). Paz-Zamudia's failure to notify the district court of any concern regarding the quantity of drugs attributable to him or his role in the conspiracy constituted a waiver of any right to object to these issues. He cannot now assert these issues on appeal. Moreover, at sentencing, Paz-Zamudia asserted that he found the quantities of drugs in the PSI to be acceptable. At his plea hearing, he admitted that he traveled to the United States to negotiate the price and quantity of a multi-kilogram drug deal.
 
 IV.
 
 6
 Paz-Zamudia argues that the district court erred by failing to depart downward from the guideline range on the basis of his alien status. Paz-Zamudia, however, did not seek this downward departure before the district court and failed to object to the court's imposition of sentence. He cannot now complain of the court's failure to depart downward.
 
 V.
 
 7
 Paz-Zamudia contends that the district court failed to ensure that he understood the nature of the charges to which he pleaded guilty. In addition, he asserts that his ambiguous responses and his limited ability to speak English warranted further instruction from the court. Accordingly, he seeks to withdraw his plea.
 
 
 8
 The transcripts of the plea and sentencing hearings indicate that Paz-Zamudia understood the charges against him and the consequences of his plea. The court explained to Paz-Zamudia that he was charged in a conspiracy to distribute drugs and that the conspiracy count did not require him to have handled, delivered, or taken drugs. Paz-Zamudia answered that he understood that, under the laws of the United States, he was responsible for all that was reasonably foreseeable to him in the conspiracy.
 
 
 9
 At the plea hearing, the court asked the government to state the penalties that accompanied Paz-Zamudia's crime. The government stated that the crimes charged carried a maximum penalty of life imprisonment, a statutory mandatory minimum penalty of ten years imprisonment, and up to four million dollars in fines. Additionally the court noted several times throughout the plea and sentencing hearings that Paz-Zamudia would be subject to deportation upon conviction. The court stated that it recommended deportation immediately and that "[f]ollowing imprisonment, he'll be placed on a term of five years of supervised release." It then directly addressed Paz-Zamudia regarding the possibility of deportation and explained that, after he was deported, he would not be allowed to return to the United States without permission from the government. During this explanation, Paz-Zamudia stated several times that he understood. Furthermore, at the end of the hearing, the court invited the parties to voice any objections or comments.
 
 
 10
 The record refutes Paz-Zamudia's claim that a language barrier caused him to misunderstand the charges. At sentencing, Paz-Zamudia requested that the court conduct the hearing in English. In granting his request, the court emphasized that Paz-Zamudia should not hesitate to interrupt if he became confused and that an interpreter, who was present throughout the hearing, would assist him if necessary.
 
 VI.
 
 11
 In his pro se briefs, Paz-Zamudia alleges that he was denied a speedy trial, that the government violated his Miranda rights, that he received ineffective assistance of counsel at his plea and sentencing, and that he was denied an evidentiary hearing at his sentencing.[2] These arguments are meritless. First, considering the complex nature of the charges and volume of evidence, the nine-month period between Paz-Zamudia's arrest and plea did not violate the Speedy Trial Act. See Barker v. Wingo, 407 U.S. 514 (1972) (upholding five-year delay). Second, the record contains no evidence that the government violated Paz-Zamudia's Miranda rights or that he received ineffective assistance of counsel in the negotiation of his plea agreement and at sentencing. Moreover, the only information in the record regarding the performance of Paz-Zamudia's attorney is the district court's acknowledgment and praise of his "great efforts" in negotiating Paz-Zamudia's plea. Third, Paz-Zamudia contends that the PSI contained inaccurate information and that he was denied an evidentiary hearing. At sentencing, however, Paz-Zamudia stated that he had no objections to the PSI, and he waived his right to an evidentiary hearing.
 
 
 12
 AFFIRMED.
 
 
 
 [1]
 See United States v. Perez, No. 95-1363 (6th Cir. May 13, 1996) (unpublished)
 
 
 [2]
 Paz-Zamudia also challenges the district court's determination of his role in the conspiracy. This court addressed this issue at III