Brian K. HUNTER, Petitioner–Appellant,

v.

UNITED STATES of America, Respondent–Appellee.

No. 96–4285.

United States Court of Appeals, Sixth Circuit.

Argued July 30, 1998.

Decided Nov. 19, 1998.

Philip J. Korey (argued and briefed), Cleveland, Ohio, for Petitioner–Appellant. Linda M. Betzer (argued and briefed), Office of the U.S. Attorney, Cleveland, Ohio, for Respondent–Appellee.

Before: JONES, RYAN, and MOORE, Circuit Judges.

RYAN, J., delivered the opinion of the court, in which NATHANIEL R. JONES, J., joined. MOORE, J. (p. 1116), delivered a separate concurring opinion.

## OPINION

RYAN, Circuit Judge.

Brian K. Hunter filed a motion to vacate sentence pursuant to 28 U.S.C. § 2255, alleging that he had received ineffective assistance of counsel in connection with his plea of guilty to conspiracy to possess cocaine base with the intent to distribute, in violation of 21 U.S.C. §§ 841, 846. The plea agreement he signed provided that he waived the right to appeal his sentence.

The district court granted Hunter's motion in part because the court recognized that it had failed to make explicit findings of fact regarding the amount of cocaine base attributable to Hunter. The newly imposed sentence was the same as the first—87 months—and Hunter filed this timely appeal. We consider first whether the appeal-waiver provision in Hunter's plea agreement forecloses him from bringing this appeal, and conclude that it does not. We nonetheless shall affirm the district court's judgment, finding Hunter's substantive claims to be lacking in merit.

### I.

In 1993, Brian Hunter was a member of a Youngstown, Ohio, gang known as the Ready Rock Boys. The *raison d'être* of the Ready Rock Boys was the processing and distribution of cocaine base. Hunter's role as a Ready Rock Boy was to distribute cocaine. One day, he sold cocaine to a government informant.

Hunter, along with ten others, was named in a 12–count indictment handed up in January 1994. Hunter himself was named in two counts. Count 1 charged Hunter with conspiring, between April 1993 until October 1993, to knowingly and intentionally possess cocaine and cocaine base, with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 846. The sole overt act attributed to Hunter was the sale of 13.1 grams of cocaine base on August 20, 1993. Hunter was also named in

Count 11 for knowingly and intentionally distributing, and possessing with intent to distribute, this same 13.1 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B).

Hunter originally pleaded not guilty, but in August 1995 changed his plea to guilty to Count 1 pursuant to a Rule 11 plea agreement; the government agreed to dismiss Count 11. The agreement specified that the parties had agreed upon a base offense level of "29 because the amount of cocaine base involved in the relevant Conduct [sic] of Brian K. Hunter is approximately 35 grams, however, the exact quantity, either above or below 35 grams, is impossible to determine." This offense level was apparently a compromise by the government, since the guidelines provide for a level 30 when the amount in question is "[a]t least 35 G but less than 50 G of Cocaine Base." U.S.S.G. § 2D1.1(c)(5). The government also agreed to recommend a two-level reduction for acceptance of responsibility. The parties specified "that a sentence of 87 months [was] appropriate." Finally, Hunter "expressly waive[d] his right to appeal his sentence on any ground."

The district court conducted a fairly brief plea hearing. Although the AUSA referred to the appeal-waiver provision in the plea agreement while addressing the district court, the court did not mention the provision to Hunter, and did not explicitly ascertain that Hunter understood he was foregoing his appeal rights. With respect to the amount of cocaine attributable to Hunter, the AUSA stated that in addition to the 13.1 grams Hunter sold to the CI, "during the course of the conspiracy Mr. Hunter sold other cocaine to other persons which the Government is aware of. Therefore, we have agreed that to our best estimate the amount of cocaine involved is 35 grams." The defendant affirmed that he had no disagreement with this statement.

The presentence report stated that Hunter's total offense level was 27, and his criminal history category was III. The total offense level was arrived at by deducting two points for acceptance of responsibility from a base offense level of 29, as stipulated in the plea agreement. The criminal history category consisted of three points, one for each of three separate crimes, and an additional two points because Hunter had committed the instant offense while on probation for a June 1992 conviction for "frequenting places were [sic] drugs are possessed," which probationary period expired in June 1993. The resulting range was 87 to 108 months.

At the sentencing hearing, Hunter objected to being held accountable for 35 grams:

[DEFENSE COUNSEL]: Your Honor, I explained before, certainly at the time of the plea, the criminal history base levels, and the plea was obviously explained in full regarding the threshold of 35 grams which was agreed on in this case to arrive at the sentence, agreed upon sentence that we arrived at.

Now question is being made of me regarding that. I think I have explained it in every possible way, and still I am getting inquiry as to that 35 grams.

I don't know what else to tell Mr. Hunter. Perhaps the Court could inquire, we can clear it up, if there is a question about it; but I am completely satisfied that it's been adequately explained, both prior to the plea and subsequent to the plea.

THE COURT: Well, I am giving him an opportunity to say anything he wishes to say at this point. That's what I indicated to him.

THE DEFENDANT: I am asking about she gave me 35 grams of cocaine; below 35 grams.... It said above 35 grams. I didn't have no 35 grams.

THE COURT: It says that you are only held accountable for being in possession of an amount of cocaine above or below 35 grams of cocaine base instead of the full amount of the drug conspiracy totaling 175.2 grams.

THE DEFENDANT: Yes, sir.

THE COURT: You got it now?

THE DEFENDANT: Yes, sir.

THE COURT: Okay.

The AUSA then stated:

Your Honor, so the record is clear, the plea agreement in this case specifies relevant conduct at approximately 35 grams because the government believed that its proof would show that this defendant over the course of the conspiracy had dealt in approximately 35 grams, and the govern-

ment was unsure that its proof, should it go to trial, would be able to attribute the entire 175 grams to this defendant within the context of the relevant conduct ...; therefore, that agreement was entered into.

Hunter was sentenced at the low end of the range, to 87 months of imprisonment, as was recommended in the plea agreement.

Hunter did not file a direct appeal, but in June 1995, did file a *pro se* motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Hunter presented four grounds for relief: (1) "Counsel failed to appeal Petitioner's sentence"; (2) "Counsel failed to object to the quantity of drugs used to sentence Petitioner"; and "Counsel failed to correct the errors in the presentence report" with regard to (3) acceptance of responsibility and (4) calculation of criminal history points.

A year later, the district court denied Hunter's petition. It concluded that Hunter's trial counsel had not been ineffective for failing to file a notice of appeal, given that Hunter had explicitly waived his right to appeal in the plea agreement. Next, it rejected Hunter's argument that, because he was no longer on probation at the time of the August 1993 overt act identified in the indictment, he should not have received two points for committing the instant federal offense while on one year of probation for a June 1992 state conviction; the court reasoned that the conspiracy to which Hunter pleaded guilty was alleged to have begun in April 1993, which was within the period of his probation.

Next, the court rejected the argument that the attorney was ineffective for failing to seek a three-point reduction for "super" acceptance of responsibility. The court concluded that Hunter did not qualify for a three-point reduction "because he neither provided complete information to the government nor timely pleaded guilty to the indictment."

Finally, the court concluded that Hunter's attorney had not been ineffective for failing to object to the attribution of 35 grams of cocaine in the plea agreement. It noted the government's representation during sentencing that it could prove that Hunter had dealt in approximately 35 grams, and the govern-

ment's corresponding belief that it might *not* be able to attribute the entire 175 grams of the conspiracy to Hunter. The court acknowledged, however, that it had failed to make any explicit findings of fact with respect to amount, and therefore ordered Hunter to be returned for resentencing.

It then held a hearing in August 1996, and made findings of fact, in pertinent part, as follows:

1. During the evidentiary hearing, the Court asked the government what evidence it would present, had the case gone to trial, to show that Hunter was responsible for approximately 35 grams of cocaine base as his part in the conspiracy. The government stated that on August 20, 1993, a controlled purchase of cocaine base took place between Hunter and a confidential informant (CI) working with Federal and State law enforcement officers.

2. On the date of purchase, the CI went to Hunter's house at 2913 Idlewood where Hunter's girlfriend was present with two small children. Hunter was subsequently dropped off at his house, which he entered, and removed a bag of cocaine base. He then delivered the bag of cocaine to the driver of the car who brought him to the house. Upon returning to his house, Hunter had the following conversation, in part, with the CI:

CI: What you got for me?

HUNTER: I've got some halves....

CI: Why you charging me so much?

HUNTER: ... I got to buy mine. You know what paying for an ounce?....

CI: How much this weigh?

HUNTER: Thirty eight....

3. The government presented the transcript of this conversation to the Court at the August 12, 1996 hearing. Hunter did not challenge the authenticity or accuracy of the transcript.

4. Hunter does not dispute the fact that he sold 13.1 grams of cocaine base on August 20, 1993. Further, the metric equivalency of 13.1 grams to United States weight is slightly less than one-half ounce. Therefore, the Court concludes that Hunter's reference to "halves" during his con-

versation with the CI on August 20, 1993 was a reference to one-half ounce of cocaine base.

5. The government further advised the Court during the August 12, 1996 hearing that the CI would have testified that he saw Hunter take the cocaine base that the CI was purchasing from a larger bag of cocaine base that contained approximately ten other bags each containing approximately one-half ounce of cocaine base.

The court's conclusions of law provided as follows:

3. At sentencing, the trial court is tasked to determine the quantity of drugs attributable to a defendant in a conspiracy by a preponderance of the evidence. During Hunter's December 1994 sentencing hearing the government advised the Court that:

the plea agreement in this case specifies relevant conduct at approximately 35 grams because the government believed that its proof would show that this defendant over the course of the conspiracy had dealt in approximately 35 grams, and the government was unsure that its proof, should it go to trial, would be able to attribute the entire 175 grams to this defendant within the context of relevant conduct under Section 1B1.3. . . .

. . . .

5. Hunter has not disputed the facts presented by the government during the August 12, 1996 hearing, the fact that this Court addressed him directly during his initial sentencing or that he has been represented by counsel during both sentencing hearings. Therefore, there is no question that Hunter entered his guilty plea before this Court knowingly and intelligently.

6. Considering the evidence presented to this Court, it is reasonably foreseeable that Hunter is accountable for 35 grams of cocaine base as his part in the conspiracy. As such, the Base Offense Level of 29 set forth in his plea agreement with the government shall remain under the provisions of the Guidelines. In addition, the government recommended a two level reduction for Acceptance of Responsibility pursuant to USSG § 3E1.1, bringing his Total Offense Level down to 27. With a Criminal

History Category of III, Hunter's range of imprisonment is 87–108 months.

7. Based upon these findings of fact and conclusions of law, the Court adopts the Guideline calculations set forth in the Pre-Sentence Report. Accordingly, Hunter's 87 month term of imprisonment shall remain in effect.

(Citations and footnotes omitted.) In October 1996, the court issued an order "that the original Judgment shall remain unchanged."

## II.

■ We review *de novo* the district court's denial of Hunter's motion under 28 U.S.C. § 2255, but review for clear error any associated factual findings. *See Nagi v. United States,* 90 F.3d 130, 134 (6th Cir.1996).

## III.

### A.

■ We first address the government's contention that Hunter is precluded from bringing this appeal because he expressly waived his right to appeal his sentence in his plea agreement. On the one hand, it is clear that an appeal-waiver provision in a plea agreement is binding so long as it is made knowingly and voluntarily. *See United States v. Ashe,* 47 F.3d 770, 775–76 (6th Cir.1995); *accord United States v. Bazzi,* 94 F.3d 1025, 1028 (6th Cir.1996); *United States v. Allison,* 59 F.3d 43, 46 (6th Cir.1995). But, as with any other argument, the government can forfeit a waiver argument by failing to raise it in a timely fashion. *See United States v. Canady,* 126 F.3d 352, 359 (2d Cir.1997); *Shukwit v. United States,* 973 F.2d 903, 904 (11th Cir.1992); *cf. Doe v. United States,* 51 F.3d 693, 697–99 (7th Cir. 1995).

■ Hunter's position is that because the government did not argue in the district court, during the section 2255 hearing, that he waived his "appeal" rights in the plea agreement, the government is precluded from doing so now. The government, however, takes the position that the issue whether Hunter waived his "appeal" rights was not implicated until Hunter filed this appeal, and

so the government did not forfeit the argument by failing to raise it below.

The government's justification for not raising the waiver issue below is devoid of logic. Either the appeal-waiver provision encompasses the arguments made in Hunter's 2255 motion, or it does not; it makes no sense to say that the provision did not preclude the 2255 motion itself, but would preclude an appeal of a possibly erroneous district court disposition of that motion. If the appeal-waiver provision forecloses a collateral attack just as much as it does a direct appeal, the collateral attack would be foreclosed at its inception, not just on appeal.

The government cites this court's decision in *Everard v. United States,* 102 F.3d 763 (6th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 1011, 136 L.Ed.2d 888 (1997), for the proposition that Hunter's appeal from the district court's disposition of his section 2255 motion is foreclosed, but the government misconstrues *Everard.* In *Everard,* the defendant had pleaded guilty and agreed to waive his appeal rights. The sentencing court refused to advise the defendant that he had a right to appeal, on the ground that the defendant had waived this right. The defendant did not file a direct appeal, but did file a 2255 motion "asserting that his guilty plea was in error ... 'because he was told by the sentencing judge that he could not appeal.' " *Id.* at 765. This court held that the district court's obligation to inform a defendant of the right to appeal does not "extend to situations in which the defendant waives the right to appeal the sentence in the plea agreement." *Id.* This holding does not speak to the proposition advanced by the government, and has no application to this case.

In addition to a lack of legal basis for the theory that the appeal-waiver provision here extended to Hunter's collateral attack, we are troubled by the lack of a factual basis for a conclusion that Hunter knowingly and voluntarily waived his rights to bring a 2255 motion. Our review of the record suggests that, at the time of the plea hearing, the district court never alerted Hunter to his appeal waiver, and never obtained an acknowledgment from Hunter that he understood he was waiving these rights. Further, since the government failed to raise the appeal-waiver issue below, we do not have before us any factual finding by the district court to the effect that Hunter waived his rights knowingly and voluntarily. Finally, the language of the appeal-waiver provision is that Hunter "waive[d] his right to appeal his sentence." It is far from obvious that this language extends to cover a section 2255 motion raising constitutional challenges.

Given the state of the record before us, we decline to decide whether, as a factual matter, Hunter waived his right to file a 2255 motion, and, perforce, whether a defendant's agreement to waive appeal of his sentence extends to proceeding under section 2255. We instead simply conclude that the government forfeited its right to rely on the appeal-waiver provision by failing to raise the issue in the district court.

**B.**

Turning to the merits, Hunter first argues that the district court should have held an evidentiary hearing regarding the amount of cocaine base attributable to him, and that relying on the government's oral proffer and a two-page transcript from the CI was improper because it was unreliable information that did not establish the quantity of drugs attributable to him by a preponderance of the evidence. Relatedly, Hunter argues that because he was confused, and thought he was only going to be held accountable for 13.1 rather than 35 grams of cocaine base, his plea was not knowing and voluntary. In the alternative, he contends, his counsel was ineffective because he "should have demanded that the government prove the 35 grams or minimally should have advised Mr. Hunter not to have entered into the plea agreement which stipulated 35 grams." Finally, Hunter argues that he did not enter the conspiracy until August 1993, the time of the sole overt act attributed to him; therefore, he was wrongly assessed two additional points for his criminal history score, because he was no longer on probation at the time he committed this offense.

The government responds that Hunter raises nonconstitutional, sentencing-guidelines issues which may not be the subject of a collateral attack. It takes the position that Hunter's ineffectiveness and plea-withdrawal

arguments are simply rehashes of his sentencing arguments, which are not cognizable.

■ To some extent at least, the government is correct. Relief is not available in a section 2255 proceeding for a claim of nonconstitutional, sentencing-guideline error when that error was procedurally defaulted through the failure to bring a direct appeal. *See Grant v. United States*, 72 F.3d 503, 505 (6th Cir.1996); *see also United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir.1998). Therefore, we will address neither the relevant-conduct nor the criminal-history issues, as these are straight sentencing issues that Hunter has procedurally defaulted.

■ But the government is trying to have it both ways. On the one hand, it contends the sentencing issues should not be addressed because they are not constitutional issues; on the other, it contends that the constitutional ineffective-assistance issue is just a repackaged sentencing issue. We disagree, and find it necessary to address the ineffective-assistance aspect of Hunter's argument, as this is a constitutional claim appropriately brought for the first time in a section 2255 proceeding.

■ It has long been settled that "[a] guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770–71, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). In the guilty-plea context, the Supreme Court employs the same two-part standard for ineffectiveness that was developed in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). That is, a defendant must demonstrate that (1) his attorney's performance was outside the range of competence demanded of attorneys in the criminal context, *and* (2) the professionally unreasonable performance prejudiced him.

■ Hunter has not argued that his guilty plea was predicated on some misinformation or inappropriate pressure from his attorney. His argument, instead, in essence is simply that although his attorney was forthcoming and accurate about the consequences of Hunter's pleading guilty versus going to trial, counsel was nonetheless constitutionally ineffective because Hunter now believes he could have gotten a better deal. We disagree.

Hunter's plea agreement, stipulating that he was accountable for 35 grams, clearly represented a compromise on the part of the government, since the total amount attributable to the conspiracy—and even directly attributable to Hunter—was much larger. And the government compromised even further from that point, agreeing to a base offense level of 29, rather than the 30 prescribed by the sentencing guidelines. Moreover, the government stipulated to two points for acceptance of responsibility. Finally, the government recommended a sentence at the bottom of the applicable range, which was clearly a boon to Hunter. In short, he could have done much worse, so the plea agreement his attorney got for him cannot be said to be evidence of ineffective performance. And even if it were, as the government points out, Hunter cannot satisfy the prejudice prong in the absence of any statement that he is actually innocent, or would have gone to trial if his attorney's performance had been different. Indeed, we find it highly improbable that Hunter would ever have gone to trial rather than plead guilty; the evidence of his culpability was overwhelming, and the possible sentence he faced was far greater than what he got under his plea agreement. We are satisfied that Hunter made a fully informed bargain; while he may later have decided that he could have done better, his dissatisfaction does not rise to a showing of constitutionally ineffective counsel.

■ While we feel compelled to address the ineffectiveness argument, we decline to address Hunter's plea-withdrawal argument. He did not move to withdraw his guilty plea, and his section 2255 motion does not suggest that the plea was other than knowing and voluntary; thus, he has forfeited such argument. It seems clear to us, moreover, that Hunter's argument in this regard is without legal foundation. A "'"plea of guilty entered by one fully aware of the direct consequences"'" of the plea is

voluntary in a constitutional sense, and the mere fact that the defendant "did not correctly assess every relevant factor entering into his decision" does not mean that the decision was not intelligent. *See Brady v. United States*, 397 U.S. 742, 755, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Hunter knew that his guilty plea carried a sentence of 87 months; the fact that he allegedly did not know the 87 months was a penalty for 35 grams, rather than 13.1 grams, does not mean that the plea was not voluntary and intelligent.

## IV.

The district court's judgment is **AFFIRMED**.

MOORE, Circuit Judge, concurring.

I concur in the majority opinion. I write separately to observe that our precedent does not foreclose the possibility that a petitioner could satisfy the *Strickland* prejudice prong without demonstrating a willingness to go to trial.

In *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Supreme Court held that the *Strickland* "test applies to challenges to guilty pleas based on ineffective assistance of counsel." With regard to the prejudice prong, the Court stated that this requirement

> focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Id.* at 59, 106 S.Ct. 366.

Although *Hill* literally requires a petitioner who has pleaded guilty to show that but for counsel errors he would have insisted on going to trial, I do not believe that the opinion forecloses the possibility that in an appropriate case a petitioner could satisfy the *Strickland* prejudice prong by demonstrating a reasonable probability that but for the alleged errors "the conditions of [petitioner's] guilty plea or his sentence would have been different...." *Newman v. Unit-*

*ed States*, No. 96–6326, 1998 WL 553048, at *3 (6th Cir. August 19, 1998) (unpublished opinion). *Hill* simply did not involve or, therefore, consider this possibility, and this court has not addressed the question in a published opinion. A panel of this court did conclude, however, that, in a case in which the petitioner alleged that a conflict of interest prevented his counsel from expeditiously negotiating a favorable plea agreement, the petitioner would be permitted to establish prejudice without demonstrating a willingness to go to trial. *See Newman*, 1998 WL 553048, at *3. Because the government is always free to reject a plea agreement, however, I believe that it will be a rare case in which a petitioner can establish to a reasonable probability that effective counsel could have negotiated a more favorable agreement. I agree with the majority that clearly Hunter has not done so in the present case.