**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Brandon PETTWAY, Defendant–
Appellant.**

**No. 03–1034.**

United States Court of Appeals,
Sixth Circuit.

June 3, 2004.

Kathleen Moro Nesi, Asst. U.S. Attorney, U.S. Attorney's Office, Detroit, MI, for Plaintiff–Appellee.

Jonathan Epstein, Federal Public Defenders Office, Detroit, MI, for Defendant–Appellant.

Before GIBBONS and COOK, Circuit Judges; and OLIVER, District Judge.*

GIBBONS, Circuit Judge.

Defendant-appellant Brandon Pettway committed a series of bank robberies by using defensive spray against tellers and demanding that they hand over cash. He was charged with three counts of bank robbery and subsequently entered into a Rule 11 plea agreement by which he waived his right to appeal his sentence if sentenced to imprisonment for 146 months or less. The district court enhanced Pettway's sentence for using a dangerous weapon and sentenced him to 146 months in prison. On appeal, Pettway claims that he may appeal his sentence notwithstanding his plea agreement because he did not want to give up his right to challenge the dangerous weapon enhancement. He also argues that the defensive spray used in this case does not constitute a dangerous weapon that merits enhancement under the sentencing guidelines. For the reasons set forth below, we dismiss this appeal.

I.

In early 2002, Pettway robbed three Michigan banks. In each of these robberies, Pettway jumped over the teller counter and sprayed a bank teller in the face with defensive spray[1] before demanding that the teller give him money. During some of these encounters, Pettway also pushed a teller to the ground and struck another teller in the face with the can of defensive spray. On March 25, 2002, when Pettway returned to one of the victim banks, an employee recognized him, and the police were notified.

Pettway was arrested and charged with three counts of bank robbery in violation of 18 U.S.C. § 2113(a) in the United States District Court for the Eastern District of Michigan. He pled guilty to all counts by entering into a Rule 11 Plea Agreement, which contained this provision:

> Pettway stated that he sprayed the tellers with dog repellant. As will be discussed, because Pettway waived the right to appeal his sentence, the exact nature of the defensive spray used is ultimately inconsequential.

---

* The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

1. Pettway's presentence report and Rule 11 plea agreement refer to the substance sprayed as pepper spray. During his plea hearing.

*Defendant's waiver of appeal rights.* If the court imposes a sentence equal to or less than the maximum sentence described in [paragraph] 2 of this agreement, defendant waives any right he may have to appeal his conviction or sentence, including any right under 18 U.S.C. § 3742 to appeal on the grounds that the sentence was imposed as a result of an incorrect application of the sentencing guidelines.

Paragraph two of the Rule 11 agreement stated that the government agreed that a sentence of no more than 146 months imprisonment was appropriate.

During sentencing and pursuant to United States Sentencing Guidelines § 2B3.1(b)(2)(D), the district court applied a four-level enhancement to Pettway's offense level for using a dangerous weapon—the defensive spray—during the robberies. Pettway was sentenced to 146 months imprisonment. He subsequently filed a timely notice of appeal of the district court's judgment.

## II.

Pettway contends that he did not want to waive his right to appeal the dangerous weapon enhancement.[2] We review *de novo* the issue of whether a defendant waived his right to appeal his sentence in a valid plea agreement. *United States v. Smith,* 344 F.3d 479, 483 (6th Cir.2003).

Pettway's plea agreement expressly stated that he waived his right to appeal his sentence, including a sentence based on an erroneous application of the sentencing guidelines, provided the sentence imposed no more than 146 months imprisonment. Pettway was sentenced to 146 months imprisonment. In order to decide if Pettway will be bound by the terms of his plea agreement, we must examine whether Pettway knowingly and voluntarily entered into the agreement. *See Davila v. United States,* 258 F.3d 448, 451 (6th Cir.2001); *United States v. Ashe,* 47 F.3d 770, 775–76 (6th Cir.1995) ("Any right, even a constitutional right, may be surrendered in a plea agreement if that waiver was made knowingly and voluntarily.").

During the district court's colloquy with Pettway at his plea hearing, the court clearly explained the appeal waiver contained in his plea agreement:

> THE COURT: Mr. Pettway, I don't know how much of this you understand. I want to make sure you understand that at least that portion that effects [sic] your rights, okay, with respect to this issue of the appeal waiver. What this means is, that by signing the plea agreement, you are giving up your right to challenge either your conviction or your sentence, including any determination I may make as to whether or not you qualify for the weapon enhancement. In other words, the increase in your sentence by virtue of having used this spray, this dog repellant or pepper spray. Do you understand what that means, it means any finding I make. I may find in your favor, in which case I assume you wouldn't appeal at that time. I may find against you as well

---

**2.** In addition, Pettway asserts that the 146–month sentencing "cap" provided by the plea agreement was based upon the government's position that Pettway had used a dangerous weapon. Pettway also states that he anticipated that the government would recommend a downward departure to his sentence, which the government did not do. We need not consider these assertions. Both of these statements speak to what sentence Pettway believed he would receive from the district court. As the court sentenced Pettway to 146 months—within the "cap" to which the plea agreement's appellate waiver applied—the only question for our consideration is whether Pettway knowingly and voluntarily entered into his plea agreement, including the agreement's appellate waiver clause.

and you could not appeal this finding. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: That's how you wish to proceed here?

THE DEFENDANT: Yes, Your Honor.

In addition, at an earlier point in the plea hearing, the government stated to the court that the plea agreement "does contain a full appeal waiver if the [c]ourt imposes a sentence equal to or less than the maximum sentence that we've described; namely, 146 months, the [d]efendant waives any right he may have to appeal this conviction or sentence." Pettway's counsel also informed the court that he had explained the ramifications of the plea agreement to his client.

From these exchanges at the plea hearing, it is abundantly apparent that Pettway knowingly and voluntarily waived his right to appeal his sentence. Therefore, Pettway is bound by the terms of his plea agreement. *See United States v. Allison,* 59 F.3d 43, 46 (6th Cir.1995) ("By appealing an issue that she stipulated to and agreed not to contest, [defendant] is attempting to void the plea agreement in violation of *Ashe.*"); *United States v. Mangie,* 29 Fed.Appx. 204, 206 (6th Cir. 2002) ("The waiver of the appeal clause is binding on these proceedings, and thus we do not reach the merits of the case, as defendant is precluded from bringing it before this court."). Because Pettway waived the right to appeal his sentence, we do not consider whether the district court properly applied the dangerous weapon enhancement.

### III.

For the foregoing reasons, we dismiss Pettway's appeal.