86 F.3d 1147
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
Maxwell BROWN, a/k/a David Jackson, a/k/a Byron Bernard,
Defendant-Appellant.
 No. 94-1139.
 United States Court of Appeals, First Circuit.
 March 4, 1996.
 
 Appeal from the United States District Court for the District of Massachusetts; Hon. A. David Mazzone, Senior U.S. District Judge.
 Mark J. Gillis, by Appointment of the Court, for appellant.
 Thomas C. Frongillo, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before TORRUELLA, Chief Judge, ROSENN,* Senior Circuit Judge, and LYNCH, Circuit Judge.
 ROSENN, Circuit Judge.
 
 
 1
 This appeal raises recurring questions concerning the appropriateness of a sentence imposed on a defendant convicted of crimes relating to the distribution of cocaine in violation of federal laws. Maxwell Brown was indicted by a federal grand jury in the United States District Court for the District of Massachusetts and charged with one count of conspiracy to distribute cocaine base, four separate counts of distribution of cocaine base, and one count of possession of a firearm with an obliterated serial number. Under the United States Sentencing Guidelines, Brown could have been imprisoned for between 324 and 405 months. Pursuant to an agreement with the Government, however, Brown pled guilty to all of the offenses in return for a significantly lower guideline range. The district court, after conducting a careful and extensive plea colloquy, sentenced Brown to 188 months in prison, to be served concurrently on all offenses. Brown appeals.[1] Because we find no merit in his claims, we affirm.
 
 I.
 
 2
 Brown first claims that the evidence was insufficient to convict him. He did not raise this issue in the district court. Therefore, our review is for plain error only. Because the defendant pled guilty, he is deemed to have waived those arguments which had not been preserved for appellate review. United States v. Ramos, 961 F.2d 1003, cert. denied, 113 S.Ct. 364 (1st Cir.1992).
 
 
 3
 A plea agreement does not automatically waive a defendant's right to appeal absent a specific, negotiated provision in the agreement containing such a waiver. See United States v. Cordero, 42 F.3d 697, 699 n. 4 (1st Cir.1994). However, such appeals are generally reserved for matters incident to sentencing as opposed to the matter of guilt. Id.
 
 
 4
 In this case, the trial court went through a painstaking plea colloquy with the defendant. First, at the court's request, the prosecution recited all the evidence that they would have put forth to prove their case against Brown. The court then went over each count with Brown to ascertain from him if he had done what he was accused of doing. The defendant admitted to the conduct in each of the drug offenses. The trial court informed defendant that these admissions were the equivalent of his having been found guilty by a jury, and the defendant still chose to enter his plea. Therefore, having admitted to the conduct, and agreed to plead guilty rather than put the Government to its burden of proof at trial, the defendant cannot now argue that the Government did not meet this burden. In return for the benefits he reaped from his plea bargain, he had agreed not to put the government to its proof. Brown has waived his right to raise this issue on appeal. See, e.g., United States v. Broce, 488 U.S. 563 (1989) (by pleading guilty, a defendant admits not only to the acts charged in the indictment, but admits guilt of a substantive crime).
 
 II.
 
 5
 Brown next claims that he should not be held accountable for crack cocaine levels, but only for powder cocaine. The record shows that the confidential informant requested that Brown "cook" the cocaine before sale, rather than deliver it in powder form. Brown did so. However, he claims that this action on the part of the Government is a form of "sentencing entrapment." That is, government agents entrapped Brown into selling crack cocaine when he only intended to sell powder cocaine, and thus subjected him to a considerably higher sentence. Brown waived this argument by his plea agreement, although he raised it in his objections to the presentence report. Brown did not inform the district court of any dispute at the plea colloquy or at sentencing.
 
 
 6
 Sentencing factor manipulation has been described as a "kissing cousin" to entrapment. United States v. Gibbens, 25 F.3d 28, 30 (1st Cir.1994). Like entrapment, the defense admits the substantive guilt of the defendant, but asserts that the government conduct was egregious enough to warrant reversal, or a lesser sentence. In sentencing factor manipulation, the claim is that the government agents manipulated the investigation for the sole purpose of boosting the defendant's offense level under the Sentencing Guidelines. Id., at 31. This claim has been recognized as theoretically valid, see, Gibbens, supra, and United States v. Montoya, 62 F.3d 1 (1st Cir.1995), but has never been used in this circuit to reduce a defendant's sentence. We note that the claim would not be valid when a defendant is engaged in an operation that sells both powder and crack cocaine. To claim sentence manipulation, a defendant needs to show that he is not predisposed to sell crack cocaine at all, rather than simply in the transaction with which he is charged.
 
 
 7
 We need not decide whether the facts of this case show sentencing manipulation. By the terms of his plea bargain, Brown stipulated to an offense level of 36. The plea bargain specifically notes that this offense level is set for selling between 500 and 1500 grams of cocaine base (i.e., "crack"). At the plea colloquy, the defendant admitted to this conduct pursuant to that plea bargain. Having reaped the fruits of his plea bargain, Brown may not now challenge an offense level for which he bargained. See, e.g., United States v. Broce, 488 U.S. 563 (1989). In fact, at the plea colloquy, defense counsel requested that the judge calculate the base offense level at 36, rather than the 39 recommended in the presentence report. Accordingly, the defendant has waived his right to contest the calculation of the base offense level on the ground of sentence manipulation.
 
 III.
 
 8
 Brown also asserts ingenuously for the first time on appeal that the three-level enhancement he received constitutes improper double counting. The court imposed a two-level increase for his possession of a weapon and a one-level increase because the conduct occurred within 1000 feet of a public school. He now argues that these facts were already taken into account by the U.S. Sentencing Commission in enacting the guideline differences between crack and powder cocaine. He claims that the Sentencing Commission assessed greater penalties for crack cocaine in part because of the greater likelihood that crack would be sold with weapons and near a school district. Therefore, to enhance a crack sentence for these offenses constitutes improper double counting.
 
 
 9
 As previously noted, however, Brown agreed to plead guilty in return for a substantial reduction in his ultimate sentence. His plea agreement contains not only the substantive offense, but also an agreement as to a specific sentence. Thus, Brown implicitly waived his right to attack the sentence on appeal. See, United States v. Womack, 985 F.2d 395 (8th Cir.), cert. denied, 114 S.Ct. 276 (1993) (agreeing to a specific punishment in plea agreement waives defendant's right to attack validity of the guideline on appeal). Moreover, double counting is not per se improper under the Guidelines. See, United States v. Ortiz, 64 F.3d 18 (1st Cir.1995). This court has noted that the Sentencing Guidelines are quite explicit about banning double counting in several instances. From this, the court has intimated that courts should be reluctant to assume double counting is improper in instances where the guidelines are silent. United States v. Lilly, 13 F.3d 15, 19 (1st Cir.1994). The guidelines are silent in this case. 2D1.1(b)(1) (weapon use) and 2D1.2(a) (use within 1000 feet), by their plain language, refer to all drug offenses. Therefore, they are equally applicable in the crack sentencing context.
 
 IV.
 
 10
 Brown also raises constitutional questions about the disparity between crack and powder cocaine sentences. Specifically, he alleges that the disparity violates the Equal Protection Clause of the Constitution and the Eighth Amendment. We have previously addressed both issues and found them to be without merit.
 
 
 11
 In United States v. Singleterry, 29 F.3d 733 (1st Cir.1994), this court recently articulated several rational reasons for the differential treatment between powder and crack cocaine. Therefore, the court held that the sentencing plan was constitutional. Singleterry, 29 F.3d at 740.
 
 
 12
 Likewise, in United States v. Graciani, 61 F.3d 70 (1st Cir.1995), this court determined that a 280-month sentence for distribution of 85.3 grams of crack cocaine did not constitute cruel and unusual punishment under the Eighth Amendment. Brown received a much lighter sentence for sale of a much greater amount of crack cocaine. He is bound by the decision in Graciani.
 
 V.
 
 13
 Brown asserts that the district court erred in not crediting him with time served on his state sentence in a related offense. However, Brown never made such a request. In fact, defense counsel specifically requested that Brown receive credit for time served on his federal sentence, which was granted; he did not mention the current state sentence, except to request that it not be included in Brown's criminal history. Thus, Brown also waived this claim.
 
 VI.
 
 14
 Lastly, Brown claims that there was a fundamental defect in the plea colloquy which would require that the sentence be vacated and remanded. At oral argument, Brown's counsel clarified that the remedy he sought was to withdraw his guilty plea. Because Brown seeks to withdraw his plea post-sentencing, he "must show a fundamental defect or a miscarriage of justice." United States v. Japa, 994 F.2d 899, 902 (1st Cir.1993). Brown cannot meet this standard.
 
 
 15
 Brown pled guilty to possession of a firearm with an obliterated serial number. Defendant relies on language in United States v. De Leon Ruiz, 47 F.3d 452 (1st Cir.1995) suggesting that knowledge that the serial numbers were obliterated may be an element of the crime. But this argument is not available to Brown as the record provides a sufficient basis to infer knowledge, even if required.
 
 
 16
 The trial judge asked the defendant if, whether or not he knew that the serial number was obliterated, he had arranged to sell the 9mm to the confidential informant. Brown stated that he was not even there at the time. The court then asked him if he arranged for the informant to receive the gun. Brown said yes, that he had controlled the transaction. In addition, Brown admitted receiving the money for the transaction. From this, it is clear that Brown controlled the sale of the gun. Although, it is not necessarily clear that Brown knew that the serial number on the gun was obliterated. He did admit to the conduct charged in the plea colloquy, the possession of a gun with an obliterated serial number, and to the conduct described in the presentence report. This adequately showed that the gun transaction was under his control and, under the circumstances present, permitted a reasonable inference that Brown knew the serial number on the gun, which he instructed his gang members to sell to the informant, had been obliterated. See, United States v. Tylkowski, 9 F.3d 1255, 1260 (7th Cir.1993) (accepting circumstantial evidence to prove the scienter required for an obliterated serial number).
 
 
 17
 The plea colloquy shows that Brown did ultimately agree that he had arranged for the gun transaction to take place, that he was aware of the transaction, and that he accepted a substantial sum from the government agent for the transaction. Thus, it was not a fundamental miscarriage of justice for the trial court to accept his guilty plea to Count 10. Moreover, we note that a reversal on the firearms conviction would not affect Brown's sentence.
 
 VII.
 
 18
 Accordingly, we affirm Brown's judgment of conviction and sentence.
 
 
 
 *
 Of the Third Circuit, sitting by designation
 
 
 [1]
 Brown's first appellate counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967). Pursuant to a court order, counsel then filed a supplemental Anders brief. This court issued an order which construed the Anders brief as a motion to withdraw, granted that motion, and appointed new counsel. This court also identified two possible issues to be raised on appeal. Those issues are discussed further in this opinion