**UNITED STATES of America,
Plaintiff,**

**v.**

**Jose Amable PEREZ, Defendant.**

**No. Crim. 98–CR–10389–NG.**

United States District Court,
D. Massachusetts.

April 8, 1999.

---

Ronald Ian Segal, Lynn, MA, for Defendant.

Gavin A. Corn, U.S.Atty's Office, Boston, MA, for U.S.

### MEMORANDUM AND ORDER

GERTNER, District Judge.

## I. *INTRODUCTION*

Defendant Jose A. Perez ("Perez") has struck a plea agreement with the United States in which he agrees to plead guilty, under Fed.R.Crim.Pro. 11(e)(1)(B), and accepts, among other things, a limited waiver of his right to appeal and his right to bring a collateral challenge to his sentence. I find that the appeal waiver is against public policy, and unenforceable.[1] I strike the clause from defendant's plea agreement, which I will otherwise accept.

The government argues that the waiver is limited and appropriate. It is limited because Perez maintains the right to appeal a sentence above the range agreed to by the parties, and can even appeal on the basis of a contested criminal history category, a dimension of sentencing which was not covered by the agreement. The government argues that this waiver is lawful because the defendant, represented by counsel, has voluntarily given up these rights. If he can waive his right to a jury trial, so the argument goes, he can waive the right to an appeal.

I disagree with the government on both counts—that the waiver is appropriately limited, and that it is lawful. Perez gives up his right to appeal errors that probation makes, or even errors that I make, which would result in a lower sentence. The government strikes no such bargain. It could appeal any mistakes I make in failing to sentence the defendant at a higher level.

In a Guideline regime that presumes that the correct guideline sentence is a fair sentence, a sentence based on a mistake is plainly unfair. Moreover, in a Guideline regime that emphasizes rational pre-sentence investigations and sentencing hearings, that seeks to stem unwarranted disparities in sentences through a reasoned analysis at the trial court level and through appellate review of sentencing, the suppression of the right to appeal judicial errors is anathema.

---

1. Unless the context requires the distinction, I use the concept of appeal to cover both direct appeals and collateral challenges.

Despite the attraction of the idea of maximizing a defendant's power by allowing him to sell whatever he has, the market for plea bargains, like every other market, should not be so deregulated that the conditions essential to assuring basic fairness are undermined. Understanding full well that all the circuits which have looked at this issue have approved of appeal waivers more unconditionally than I do here,[2] I nonetheless hold that appeal waiver clauses, including the limited one in the present case, are contrary to public policy and void.[3]

## II. *FACTUAL BACKGROUND*

In his plea agreement, Perez agrees to plead guilty, under Rule 11(e)(1)(B), to one count of having distributed, and possessed with intent to distribute, approximately 61 grams of cocaine and 218 grams of heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and to one count of having been found unlawfully in the United States after having been deported following his conviction for an aggravated felony, in violation of 8 U.S.C. § 1326. Perez agrees in the plea agreement that his Combined Offense Level under the Sentencing Guidelines is Level 26.

Paragraph 6 of the plea agreement contains the following waiver clause:

Defendant is aware that he has the right to challenge his sentence and guilty plea on direct appeal. Defendant is also aware that he may, in some circumstances, be able to argue that his plea should be set aside, or his sentence set aside or reduced, in a collateral challenge (such as pursuant to a motion under 28 U.S.C. § 2255).

In consideration of the concessions made by the U.S. Attorney in this Agreement, Defendant knowingly and voluntarily waives his right to appeal or collaterally challenge:

(1) Defendant's guilty plea and any other aspect of Defendant's conviction, including, but not limited to, any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues;

(2) The adoption by the District Court at sentencing of any of the positions found in paragraph 3 [covering the Offense Level and the acceptance of responsibility

**2.** *See United States v. Rivera*, 971 F.2d 876 (2d Cir.1992); *United States v. Wiggins*, 905 F.2d 51 (4th Cir.1990); *United States v. Melancon*, 972 F.2d 566 (5th Cir.1992); *United States v. Allison*, 59 F.3d 43 (6th Cir.1995), *cert. denied*, 516 U.S. 1002, 116 S.Ct. 548, 133 L.Ed.2d 450 (1995); *United States v. Schmidt*, 47 F.3d 188 (7th Cir.1995); *United States v. Rutan*, 956 F.2d 827 (8th Cir.1992); *United States v. Navarro–Botello*, 912 F.2d 318 (9th Cir.1990), *cert. denied*, 503 U.S. 942, 112 S.Ct. 1488, 117 L.Ed.2d 629 (1992); *United States v. Hernandez*, 134 F.3d 1435 (10th Cir.1998); *United States v. Bushert*, 997 F.2d 1343 (11th Cir.1993), *cert. denied*, 513 U.S. 1051, 115 S.Ct. 652, 130 L.Ed.2d 556 (1994).

**3.** The First Circuit has yet to pass directly on this issue. In *United States v. Cordero*, 42 F.3d 697, 699 n. 4 (1st Cir.1994) it noted "that some courts have enforced plea agreements in which defendants agreed to waive the right to appeal their sentences." In an unpublished decision, *United States v. Brown*, 1996 WL 283313 (1st Cir. March 4, 1996), the First Circuit implicitly embraced, in *dicta*, appeal waivers in plea bargains, holding that "[a] plea agreement does not automatically waive a defendant's right to appeal absent a specific, negotiated provision in the agreement containing such a waiver." *Id.* at *1 (citing *Cordero* ). But this passing reference has no precedential authority. Other cases have touched on the issue, although without lengthy analysis. *United States v. Holland*, 1996 WL 208482 (D.Mass. March 20, 1996) held that "a defendant can waive his right to appeal as part of a plea agreement if the waiver is informed and voluntary." *Id.* at *2 (citing the Fifth Circuit case *Melancon*, 972 F.2d at 567). The court in *Gaeta v. United States*, 921 F.Supp. 864 (D.Mass.1996), cited *United States v. DeSantiago–Martinez*, 38 F.3d 394, 395–96 (9th Cir.1992), for the proposition that "a sentencing court need not advise a defendant who has pled guilty of his right to appeal" if he has no ground to appeal, such as when he expressly waives his sentencing appeal rights in a plea agreement. 921 F.Supp. at 866.

reduction] which will be advocated by the U.S. Attorney with regard to offense conduct, adjustments and/or criminal history under the U.S. Sentencing Guidelines or application of minimum mandatory sentences; and

(3) The imposition by the District Court of a sentence which does not exceed that being recommended by the U.S. Attorney, as set out in paragraph 4 [covering sentence recommendation], even if the Court rejects one or more positions advocated by the U.S. Attorney or Defendant with regard to the application of the U.S. Sentencing Guidelines or application of minimum mandatory sentences.

In consideration of the concessions made by the U.S. Attorney in this Agreement, Defendant agrees not to seek to be sentenced or resentenced with the benefit of any successful collateral challenge to any counseled criminal conviction that exists as of the date of this Agreement.

Defendant's waiver of rights to appeal and to bring collateral challenges shall not apply to appeals or challenges based on new legal principles in First Circuit or Supreme Court cases decided after the date of this Agreement which are held by the First Circuit or Supreme Court to have retroactive effect.

Defendant's waiver also shall not extend to an appeal or collateral challenge based solely on the argument that the District Court misunderstood the scope of its authority to depart from the applicable Sentencing Guideline range, where the District Court states on the record at sentencing both its desire to depart and the basis on which it would depart if it had the legal authority to do so.

This Agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b), and the U.S. Attorney therefore retains his appeal rights.

As waiver clauses go, the one in this case is fairly narrow. In particular, it would allow Perez to appeal any sentence above the guideline range agreed to (Level 26). In addition, it would allow him to appeal on the basis of a contested criminal history category since that was not a term settled in paragraph 3.[4] Contrast the broader waiver clauses invalidated in *United States v. Johnson*, 992 F.Supp. 437 (D.D.C.1997) and *United States v. Raynor*, 989 F.Supp. 43 (D.D.C.1997). In *Johnson* and *Raynor*, the defendants were prepared to enter pleas pursuant to plea agreements in which they waived their "right to appeal any sentence within the maximum provided in the statute(s) of conviction." *Johnson*, 992 F.Supp. at 438; *Raynor*, 989 F.Supp. at 43. Thus neither would have been free, as Perez would be under his plea agreement, to appeal a sentence above the range he expected.

The government argues that the only right to appeal that Perez has actually given up is the right to appeal a sentence reflecting the government's decision to decline to recommend a reduction under U.S.S.G. § 3E1.1 because it decides that some action by Perez is inconsistent with his acceptance of responsibility. But the government underestimates the potential limiting power of the appeal waiver clause.[5]

Because Perez made a plea under Rule 11(e)(1)(B), I have the freedom to sentence him differently from the sentence he and the government have agreed to, and he cannot then withdraw his plea. Fed.

---

**4.** In another plea agreement, however, the same waiver clause could aim to bind a defendant not to appeal his criminal history.

**5.** I accept that the government is correct when it argues that the first numbered subparagraph merely makes explicit the well-settled principle that a guilty plea constitutes a waiver of any non-jurisdictional deprivations of constitutional rights that occurred prior to the entry of the guilty plea. *See Cordero*, 42 F.3d at 698–99.

R.Crim.Pro. 11(e)(2). If I err by sentencing him at an Offense Level above Level 26, he can appeal any mistakes he thinks I have made. But if I err by failing to sentence him to a lower Level than it turns out he actually deserves, he is stuck. The government, in a reverse situation, however, has no such constraints. It can appeal any mistakes I make in going below the Level it bargained for, *or* in not going as high as it recommends.

The government argues that there is really no substantive loss here to Perez because he could not appeal a sentence he did not contest before me. Since the plea agreement commits him not to argue against my sentencing him at or below Level 26, he has lost nothing. But that is an oversimplification. As Perez understands things now, he and his counsel see no reason to contest the Level 26 to which he has pleaded. But under the Guidelines regime, we entrust probation with the obligation to do an analysis of the facts, independent of both the government and the defense. And we entrust the court to independently evaluate the sentence unconstrained by the parties' positions. Suppose probation comes to me with information, perhaps unknown to counsel, suggesting that I should sentence him at a lower range. Suppose, for example, that further investigation shows that the quantities of cocaine and/or heroin were significantly lower than agreed to in the plea agreement. Perez could try to argue that he should be sentenced to a lower range than he originally agreed to, that he did not have the benefit of this new information when he entered the plea agreement. If I fail to take this new information into account, I will have sentenced him unfairly. If he cannot appeal that mistake, the unfairness will have been compounded.

### III. CAN PARTICULAR TERMS OF THE PLEA AGREEMENT BE INVALIDATED OR MUST THE COURT ACCEPT OR REJECT THE AGREEMENT IN TOTO?

▇ Before addressing the merits of the issue, I must address a preliminary question—whether I can reject a particular clause in a plea agreement without rejecting the bargain in toto. In open court, Perez, through his counsel, clearly expressed his desire not to have to waive his right of appeal, but he also said he would rather keep the bargain he has struck than have no bargain at all. I hold that I have the authority to strike the waiver clause as contrary to public policy, while accepting the rest of the bargain the defendant has struck.

The government argues that I cannot pick and choose among provisions in the agreement. It points to Rule 11(e)(2), which gives courts the authority to accept or reject plea agreements under subdivision (e)(1)(A) or (C), but does not mention any such authority to accept or reject pleas under subdivision (e)(1)(B). It claims that it follows that I may not "interfere with such plea agreements" at all—either by striking a term or by rejecting the agreement as a whole.

While I accept that I do not have the "general authority to alter the terms of the agreement," *United States v. Dean*, 80 F.3d 1535, 1539 (11th Cir.1996) *modified* 87 F.3d 1212 (11th Cir.1996), I hold that I do have the authority to strike specific terms that would make an otherwise acceptable agreement fundamentally unjust and contrary to public policy. I follow the court in *United States v. Ready*, 82 F.3d 551 (2d Cir.1996), which held that "courts may apply general fairness principles to invalidate particular terms of a plea agreement." *Id.* at 559.

The *Ready* court grounded its authority to strike or invalidate particular terms of a plea agreement on contract principles. It relied on both the Restatement (Second) of Contracts, § 178 (1981) ("A promise or other term of an agreement is unenforceable on grounds of public policy if ... the interest in its enforcement is clearly outweighed in the circumstances by a public

policy against the enforcement of such terms."); and the U.C.C. § 2–302(1) (1994) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may ... enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.").

This use of contract law in interpreting plea bargains is clearly consistent with First Circuit practice. The court in *United States v. Giorgi*, 840 F.2d 1022, 1025 (1st Cir.1988), held that courts "are guided in our interpretation of [a] disputed plea agreement by general principles of contract law." At the same time, it is clear that a plea agreement is a unique kind of contract.

> While such agreements serve an important role in the efficient operation of the criminal justice system, they also effect a waiver of defendant's rights: "However important plea bargaining may be in the administration of criminal justice, our opinions have established that a guilty plea is a serious and sobering occasion inasmuch as it constitutes a waiver of the fundamental rights to a jury trial ... to confront one's accusers ... to present witnesses in one's defense ... to remain silent ... and to be convicted [only] by proof beyond all reasonable doubt...." *Santobello v. New York*, 404 U.S. 257, 264, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (Douglas, J., concurring) (citations omitted).

*Giorgi*, 840 F.2d at 1026.

■ Because of the serious nature of the rights being waived in a plea, courts must adopt "judicial safeguards to protect the integrity of a plea agreement." *Id.* See also *United States v. Harvey*, 791 F.2d

294, 300 (4th Cir.1986) ("First, the defendant's underlying 'contract' right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law. Second, with respect to federal prosecutions, the courts' concerns run even wider than protection of the defendant's individual constitutional rights—to concerns for the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government.") (citations and internal quotations marks omitted).[6]

■ I hold that it is an appropriate use of contract law, in an effort to safeguard the integrity of a plea agreement, to strike a clause from the agreement on the ground that it is contrary to public policy. Indeed, in my judgment, my choice to strike just the single clause is more fair, and no more in conflict with Rule 11(e), than the decisions of the *Johnson* and *Raynor* courts to reject altogether plea bargains conditioned with appeals waivers. See also *United States v. Melancon*, 972 F.2d 566, 568 (5th Cir.1992) (holding that courts have discretion to accept appeal waivers, but also holding "that a district court's refusal to accept such a waiver [for policy reasons] likewise would be within its discretion."); *United States v. Garcia*, 166 F.3d 519, 521 (2d Cir.1999) ("[P]lea agreements are subject to the public policy constraints that bear upon the enforcement of other kinds of contracts").

## IV. *IS THE WAIVER OF THE RIGHT TO APPEAL UNLAWFUL AND AGAINST PUBLIC POLICY?*

■ The government argues that just as defendants can waive "more fundamen-

---

6. The standard protections include placing the "most meticulous standards of both promise and performance [on] prosecutors engaged in plea bargaining," *Giorgi*, 840 F.2d at 1026; "caution[ing] the government to avoid narrow interpretations of language within a plea agreement where such a construction would violate the spirit of the agreement," *id.*; and "impos[ing] a duty upon the government, when drafting an agreement, to present a recommendation which is lawful, clear and consistent both internally and with respect to the underlying promise." *Id.*

tal constitutional rights," so they can waive the merely statutory right to appeal certain aspects of their sentences. This line of reasoning, the government points out, has been accepted in all nine circuits that have examined appeal waivers.[7] The government also cites the benefits of "speed, economy, and finality," that come with the waiver of appeal rights. In addition, it argues that the waiver in this case is significantly narrower than the waiver in the two cases in which waiver of appeal provisions were found *per se* invalid, *Johnson* and *Raynor.* As a result, the government argues, the primary concern in those cases—the inability to appeal an unknown sentence that exceeds what the parties recommended—is met. Finally, the government argues that there is no evidence that this is a contract of adhesion, or a contract to which Perez did not agree knowingly and voluntarily.

I find the government's arguments unconvincing. First, I find the "syllogism" that runs from the premise that defendants can waive various constitutional rights to the conclusion that defendants can waive the statutory right to appeal a sentence overlooks both the significance of sentence appeals in the criminal justice system, and the limits on the waivability of rights. Second, I find that there is a due process problem with pressuring defendants, in a plea bargain setting, to waive their appeal rights. Third, I find that appeal waiver clauses are inconsistent with, and would systematically undermine, the Congressional intent in drafting the Sentencing Reform Act of 1984. Fourth, I find that there are contractual problems with appeal waivers in plea bargains. Fifth, I find that the government's interest in enforcing appeal waivers is not very substantial. And I find throughout that these arguments have force even with regard to the limited appeal waiver in this case.

7. *See supra* note 2.

## A. *The Government's Central Argument—that Constitutional Rights Can Be Waived, and Therefore the Statutory Right To Appeal One's Sentence Can Be Waived—Is Oversimplified*

The government's central argument, and the primary argument underlying the position of the nine Circuits that have approved of appeal waivers in plea agreements, is well encapsulated in a syllogism that Judge Parker, concurring in *Melancon,* pulls out of the majority opinion in that case: "The right to appeal is a statutory right, not a constitutional right. The Supreme Court has repeatedly recognized that a defendant may waive constitutional rights as part of a plea bargaining agreement. It follows that a defendant may also waive statutory rights, including the right to appeal." 972 F.2d at 570 (internal square brackets omitted). *See also United States v. Wiggins,* 905 F.2d 51 (4th Cir. 1990): "[i]f defendants can waive fundamental constitutional rights such as the right to counsel, or the right to a jury trial, surely they are not precluded from waiving procedural rights granted by statute." 905 F.2d at 53 (quoting from *United States v. Clark,* 865 F.2d 1433, 1437 (4th Cir. 1989), a case dealing with waiver of a statutory right to an immediate detention hearing).

But this syllogism overlooks a host of important issues. First, it too quickly assumes that there is no constitutional dimension to the right to appeal. As was pointed out in *Ready:* "Once a system of appellate courts is put into place ..., a criminal defendant's ability to appeal may not be unduly burdened." 82 F.3d at 554 (citing *North Carolina v. Pearce,* 395 U.S. 711, 724, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds by Alabama v. Smith,* 490 U.S. 794, 802, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), and *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956)). Indeed, again as noted by Judge Parker, the doctrine of

unconstitutional conditions can apply to this kind of statutory right; once the right is given, the government has a constitutional duty to allow unfettered and equal access to it. *Melancon,* 972 F.2d at 577 (concurrence) (citing *Griffin* for the proposition that the government has a due process and equal protection duty not to limit access to a statutorily created right of direct appeal in a criminal case).

Second, the syllogism fails to take into account the many rights which are not waivable, both because of their essential role in protecting individual defendants, and because of their essential role in maintaining an overall fair system of justice. For example, the right to appeal ineffective assistance of counsel is not waivable.[8] Defendants also cannot waive the right to counsel free of a conflict of interest, "in part because such a conflict 'constitutes a breach of professional ethics and invites disrespect for the integrity of the court.'" *Ready,* 82 F.3d at 556 (quoting *Wheat v. United States,* 486 U.S. 153, 162, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988)). There are also at least three other limits that have been noted by at least some of the circuits: First, most circuits agree that the right to appeal is preserved if the court relied on a constitutionally impermissible factor, such as race[9] or naturalized status.[10] Second, most circuits agree that the right to appeal is preserved if the defendant receives an illegal sentence, including one above the statutory maximum.[11] Third, at least two circuits hold that the right to appeal is preserved if the sentence is not in accordance with the negotiated agreement,[12]

and one circuit has adopted a related line, that a waiver will not bar examination of whether the sentence is "so far beyond the anticipated range ... [as to] raise serious questions of fundamental fairness." *United States v. Rosa,* 123 F.3d 94, 101 (2d Cir.1997).

Third, since not all rights are waivable, the syllogism falls short in failing to distinguish, in some principled and contextually sensitive way, between those waivers which are acceptable, and those which are not. To illustrate how important basic distinctions can be, consider *Newton v. Rumery,* 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987), a case which held that the right to bring a § 1983 suit, in that case against the town of Newton, could be waived in exchange for the prosecutor's decision to drop charges. A number of circuits have cited to *Newton* to support the proposition that an exchange of the right to appeal for prosecutorial concessions can reflect "a highly rational judgment." *See, e.g., United States v. Navarro–Botello,* 912 F.2d 318, 320 (9th Cir. 1990), *cert. denied,* 503 U.S. 942, 112 S.Ct. 1488, 117 L.Ed.2d 629 (1992) (quoting *Newton,* 480 U.S. at 394, 107 S.Ct. 1187). But the waiver of a right to bring a § 1983 suit in *Newton* is profoundly different from the waiver of a right to appeal one's sentence.

First, the § 1983 suit in *Newton* was based on past action. One can assess roughly what one is giving up in possible damages. But the mistakes which one might appeal are yet to be made and

**8.** *See, e.g., United States v. Attar,* 38 F.3d 727, 731 (4th Cir.1994); *United States v. Henderson,* 72 F.3d 463, 464 (5th Cir.1995); *United States v. Ready,* 82 F.3d 551, 555 (2d Cir.1996) (citing *Henderson* ); *Jones v. U.S.,* 167 F.3d 1142, 1145 (7th Cir.1999) (citing *Attar* and *Henderson* ). *See also United States v. Pruitt,* 32 F.3d 431, 433 (9th Cir.1994) (expressing doubt that a plea agreement could waive a claim of ineffective assistance of counsel).

**9.** *See, e.g., United States v. Marin,* 961 F.2d 493, 496 (4th Cir.1992); *Schmidt,* 47 F.3d at

190 (citing *Marin* ), *United States v. Rosa,* 123 F.3d 94, 98 (2d Cir.1997) (citing *Marin* ).

**10.** *See, e.g., United States v. Jacobson,* 15 F.3d 19, 22–23 (2d Cir.1994).

**11.** *See, e.g., Rutan,* 956 F.2d at 829; *United States v. Michelsen,* 141 F.3d 867, 872 (8th Cir.1998); *Marin,* 961 F.2d at 496.

**12.** *See Navarro–Botello,* 912 F.2d at 321; *Rutan,* 956 F.2d at 830 (citing *Navarro–Botello* ).

therefore unknowable at the time of waiver. *See Johnson,* 992 F.Supp. at 439 ("[I]t is only after the judge has sentenced the defendant that the latter knows which rights he waived."). Second, a § 1983 suit is about *civil* damages, not loss of *liberty.* We plainly take much more care to protect people from the wrongful loss of liberty than from the wrongful loss of civil damages.

Even if the appeal waiver is as limited as it is in Perez's case, the right to appeal mistakes I may make in failing to sentence him to as short a sentence as he deserves is an important protection of his fundamental interest in liberty. Given the shortcomings of the syllogism, I cannot simply follow the government and the other circuits in adopting it.

### B. *Due Process Problems of Appeal Waivers in Connection with Plea Bargains*

As just noted above, the right to appeal having been granted by Congress, "a criminal defendant's ability to appeal may not be unduly burdened." *Ready,* 82 F.3d at 554. Any undue burden would be a violation of due process. As also noted above, there are certain rights that cannot be waived without doing violence to the fairness of the system. The waiver at issue in this case, coming as it does in connection with a plea bargain, implicates such concerns.

To appreciate why the government's conditioning benefits in a plea bargain on the waiver of appeal rights is a violation of due process, consider first the following example. If the government told a defendant that he had to waive his right to counsel *before* entering substantive plea negotiations, no court would accept the resulting bargain; the deal would be unconscionable and unenforceable. The defendant would have been pressured to make a deal without an important, even if fallible, tool for understanding whether the deal was a fair and reasonable one. While a defendant has the right to waive counsel on his own initiative, it would not be acceptable for the government to pressure him to do so at plea negotiations. It would be a violation of due process for the government to condition important benefits, with implications for a defendant's liberty, upon his giving up a resource so essential to making a fair deal.

Nor could the United States Attorney's office condition a plea on a defendant's waiving his right to appeal the ineffective assistance of counsel in the negotiation process.[13] Being pressured into accepting a deal regardless of whether it was struck with the "aid" of ineffective counsel is as problematic for the individual whose counsel is ineffective as being pressured into making a deal without the aid of counsel at all.

All courts and commentators agree that defendants should not be able to take risks like these in hopes of obtaining a better bargain. The small gain for the government in terms of "speed, economy and finality," *see Wiggins,* 905 F.2d at 54, and the prospect that some defendants would be able to use such waivers as bargaining chips, are simply not as important as preserving these checks on unfairness.

It is no more acceptable, I hold, for the United States Attorney's office to make a deal with a defendant only on the condition that he waive his right to appeal errors the *court* may make in determining his ultimate sentence. Like effective counsel, a court's rulings on sentencing are crucial to assuring that a defendant gets what he deserves.

The fact that normal pleas involve giving up the right to trial, and all the constitutional protections that accompany it, does not suggest otherwise. We set apart the rights to counsel and to appeal ineffective assistance of counsel as things the government cannot seek in a plea bargain because these are necessary to preserve the

---

13.  *See supra* note 8.

essence of the protections the defendant gives up, namely the protections which ensure that the defendant is treated fairly by the criminal justice system. I hold that the right to appeal judicial mistakes is of the same nature.

The fact that Perez would be unable to appeal only those mistakes that would not make him worse off than he now expects to be does not dissolve this due process problem. The Guidelines regime provides an important role for the probation office to do an independent investigation, and if the probation office (or either party) turns up new information which shows that Perez should be sentenced at a Level lower than he now expects, he has just as much right to that lower sentence as he has to avoid a sentence that wrongfully punishes him for longer than he deserves. If I make a mistake in failing to sentence him at an appropriately low Level, his fundamental liberty interest will be protected only if he has a right to appeal my mistake.

## C. *Problems with Appeal Waivers under the Guidelines Regime*

We live under a sentencing regime in which Congress sought to reign in the unwarranted disparities in sentencing between different courts by simultaneously imposing the Sentencing Guidelines on the courts, and giving defendants a right to appeal their sentences. Prior to the passage of the Sentencing Reform Act of 1984, appeals were taken under 28 U.S.C. § 1291, and the right to appeal a sentence "was limited to sentences that were imposed above statutory limits, that were the result of material misinformation, or that were based on a constitutionally impermissible factor." *Ready,* 82 F.3d at 555. "A new statutory section (which we quote in its current form) provided not just for review of a sentence 'imposed in violation of law,' 18 U.S.C. § 3742(a)(1), but also for review of a sentence 'imposed as a result of an incorrect application of the sentencing guidelines,' *id.*" *Id.*

In a regime in which almost all defendants plead guilty, rather than go to trial, it is crucial for carrying out the intent of Congress in passing § 3742(a)(1) that misapplications of the sentencing guidelines be appealable after a plea as well as after trial. As Judge Parker said: Appeals waivers allow district courts to usurp "the discretionary sentencing authority Congress expressly took away from the federal trial courts in 1984." *Melancon,* 972 F.2d at 574 (concurring). The result of a general pattern of appeals waivers would be a return to a regime in which the disparities Congress sought to eliminate would go generally unchecked.

In addition, allowing appeals waivers would have a cost in terms of the development of appellate law necessary to clarify how the guidelines should be applied. For example, in the past month alone, there have been three First Circuit cases in which defendants pleaded, were sentenced, appealed their sentences, and the First Circuit remanded their cases either to correct sentencing errors or to require further clarification. In *United States v. Amirault,* 173 F.3d 28 (1st Cir.1999), the defendant pleaded guilty to one count of possessing visual depictions of minors engaged in sexually explicit conduct. Over his objection, the district court held that his sentence should have been augmented for "trafficking in material involving the sexual exploitation of a minor." *Id.* at 38. The First Circuit vacated the sentence, holding that the district court wrongly concluded that the photo in question depicted sexually explicit conduct, and therefore improperly applied the "trafficking" cross-reference. In *United States v. Dueno,* 171 F.3d 3 (1st Cir.1999), the defendant pleaded guilty to a three count indictment involving being a felon illegally in possession of and illegally transferring a firearm. At his sentencing, he and the government disagreed about whether a 1994 conviction for breaking and entering was "a crime of violence"; if but only if it did, would he be sentenced as a career offender. The First

Circuit concluded that there was insufficient evidence that the crime in question was a crime of violence, vacated the sentence, and remanded for resentencing. Finally, in *United States v. Sacko*, 170 F.3d 227 (1st Cir.1999), the defendant pleaded guilty to two counts, also of being a felon in possession of a firearm. In his case too, the issue on appeal was whether he should have been sentenced as a career criminal. Specifically, the question was whether his conviction for statutory rape was a "violent felony." The First Circuit remanded so that the district court could take evidence on the question whether the sexual penetration of a fourteen year old by someone eighteen years old or older "involves conduct presenting serious potential risk of physical injury of the former," *id.* at ——, 1999 WL at *5—only if the answer is affirmative would the sentence be correct. If any of these three defendants has waived his right to appeal the relevant issue, and if such waivers were accepted, not only would they have been sentenced improperly, but the First Circuit's law on the application of the sentencing guidelines in the context of pornography and prior criminal history would have remained less developed.[14]

There is also a more insidious systemic effect. If appeals waivers are generally accepted, then the baseline for cooperation will shift so that only a defendant who has something exceptionally valuable for the government will be able to maintain his right to appeal. Rather than seeing waiver of appeal rights as a bargaining chip, defendants will have to bargain for the ability to keep it. This undermining of the right that Congress intended to grant would be the inevitable effect of a system in which only one side, the government, is a repeat player, and in which the government can play one defendant off another.

There is an additional problem of systemic distortion which arises from the fact that many appeal waivers, including the instant one, are asymmetrical: the defendant waives appeal rights which the government does not waive. There are two reasons why this asymmetry is objectionable. First, it shows one of the main reasons to push for appeal waivers, the desire for finality, to be disingenuous. As the court in *United States v. Guevara*, 941 F.2d 1299 (4th Cir.1991), said: "The finality of judgments and sentences is no more preserved by appeals by the government than by appeals by the defendant, and it strikes us as far too one-sided to construe the plea agreement to permit an appeal by the government for a fancied mistake by the district court as here, but not to permit an appeal on similar grounds by the defendant...." 941 F.2d at 1299.

Second, and more importantly from the perspective of a concern with systemic distortion, if the government has appeal rights that the defendant does not have, then a disproportionate number of cases brought on appeal will be brought by the government. This would lead to skewed case law, and it would be contrary to "the symmetry Congress intended [to create with] Section 3742." *Raynor*, 989 F.Supp. at 46.[15]

These problems are all obviously less severe the more limited the waiver of appeals rights is. But even the limited waiver in the instant case could, if generally adopted, lead to an increase in sentencing disparity, inhibit the development of the case law, shift the baseline expectation regarding the right to appeal, and skew the case law which develops because of an imbalance in appeals by the government and by defendants. These problems are not acceptable.

14. This point is just as relevant for cases in which the trial court fails to adjust downward as when it inappropriately adjusts upward.

15. As *Raynor* noted, 989 F.Supp. at 48 n. 5, § 3742 gives the same appeal rights to defendants and the government under subdivision (c), dealing with pleas under Rule 11(e)(1)(C), just as it does in general under subdivisions (a) and (b).

### D. *Contractual Problems with Appeal Waivers in Plea Bargains*

Though the government protests that Perez agreed to the waiver of his right to appeal knowingly and voluntarily, I nonetheless hold that it is contractually invalid. *See Johnson,* 992 F.Supp. at 439 (holding that the inequality of appeal rights between the government and the defendant "strengthens the conclusion that this kind of plea agreement is a contract of adhesion.")

To understand why a plea bargain with an appeal waiver clause is an unenforceable contract, one has to appreciate that defendants frequently get rewarded for making deals early on, before they know much about the government's case against them. This relieves the government of the difficulties of discovery, and gives the government earlier access to the assistance of cooperating defendants, but it also means that deals are being struck in some significant degree of ignorance. It is not unusual for probation to come in with a presentence report that brings to light facts that the parties did not consider in their plea negotiations.

Thus, it would be wrong to present the bargain struck in the present case as if it were a well worked out contract, in which the defendant is nonetheless trying to maintain an escape clause despite having done diligent research. The better analogy is with a commercial contracting party which has signed a letter of intent. While a plea bargain binds the parties in a way that a letter of intent does not, in other respects it is similar. Significantly, under Rule 11(e)(1)(B), a plea bargain, like a letter of intent, is likely to be made at a preliminary stage in the interaction between the parties, with a dearth of information, and with important details yet to be filled in.

Indeed, Rule 11(e)(1)(B) pleas are far from standard, well informed commercial contracts. First, third parties, probation and the judge, have a substantial role in determining what the contract will ultimately be. Second, liberty, not mere money is at stake. Third, the pressure to sign early is likely to be much more intense. And fourth, one party, the government, has a tremendous advantage in bargaining power "if only because the precise charge or charges to be brought—and thus the ultimate sentence to be imposed under the guideline scheme—is up to the prosecution." *Johnson,* 992 F.Supp. at 439–40.

Nevertheless, the government argues that plea bargains with appeal waivers are not contracts of adhesion. It cites *Ashley v. Wells Fargo Alarm Services,* 907 F.2d 1274, 1276 (1st Cir.1990), for referencing the following quote from *Grady v. Grady,* 504 A.2d 444, 446–47 (R.I.1986) (quoting *Hume v. United States,* 132 U.S. 406, 10 S.Ct. 134, 33 L.Ed. 393 (1889):

> ... a court w[ill] usually refuse to enforce a contract on the ground of unconscionability only when the inequality of the bargain was so manifest as to shock the judgment of a person of good sense and when the terms were so unreasonable that 'no man in his senses and not under delusion, would make on the one hand, and as no honest and fair man would accept on the other' ...

907 F.2d at 1276.

Contrary to the government's intentions in citing this passage, I hold that this language actually fits the case of plea bargains which involve appeal waivers fairly well. To see why, imagine, for example, a commercial contractual situation in which a party, early in negotiations, signed a contract allowing a mediator to determine the final price for some object or service. In this contract, the parties would have submitted a suggested price, but information affecting the mediator's judgment is still likely to come in. Imagine, further, that the first party waived the right to appeal any decision of the mediator as long as the price was no worse for that party than he thought when submitting the suggested price. Even if the mediator's decision fails to reflect new information showing the

price should be better, perhaps substantially better, for that party, he will not be free to appeal the mediator's decision. And imagine, finally, that only one party gave up that appeal right.

Even without this last point, it would be quite odd for commercial parties to contract to submit a crucial element, such as price, to a mediator without retaining a right to appeal. If one adds the last point—that only one side gives up appeal rights—there is cause for concern. A court considering whether to enforce such a contract would rightly wonder what could drive a party to make such a deal.

Now suppose that the court found out that the party which waived its right to appeal faced an alternative that was quite dire, say loss of a lifetime's worth of savings and investment. And suppose the court found out that the other party was a repeat player with vastly superior bargaining power who found parties like the first and played them off each other. At this point, the court should clearly entertain the possibility that this waiver of the right to appeal was unconscionably forced on the party signing it.

In this commercial analog to a plea bargain with an appeal waiver, a court would have good reason to strike as unconscionable the asymmetrical waiver of appeal rights. Shifting back to real plea bargains that include appeal waivers, their unacceptability becomes clear. As noted above, courts are supposed to be *more* scrupulous in the protection of defendants making plea bargain contracts than they would be of the average commercial contractor. *Recall Harvey,* 791 F.2d at 300:

> First, the defendant's underlying 'contract' right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law. Second, with respect to federal prosecutions, the courts' concerns run even wider than protection of the defendant's individual constitutional rights—to concerns for the honor of the government,

public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government.

791 F.2d at 300 (citations and internal quotations marks omitted).

### E. *Appeal Waivers Are Not Essential to the Government*

Finally, it is worth pointing out that the government's interest in having waiver clauses is not particularly strong. First, it is not at all clear that there is a tide of appeals from pleas that needs to be stemmed. As the court in *Raynor* said, "[t]here are not very many frivolous appeals of sentences after pleas in this jurisdiction." 989 F.Supp. at 48.

Second, as a means of stemming whatever tide there is, appeals waivers will not work particularly well. As is already clear from the circuits where such appeals have been approved, "appeals will simply come equipped with additional arguments about whether one's right to appeal has been waived 'intelligently, knowingly and voluntarily.'" *Melancon,* 972 F.2d at 579 (Parker concurring).

Third, the government has at its disposal a more legitimate alternative. It could seek to make more plea bargains under Rule 11(e)(1)(C). In those kinds of pleas, the defendant knows exactly what sentence he will get if the plea is accepted, and there is no need to protect against judicial error; if the judge does not accept the plea, the defendant can withdraw it. Moreover, under that kind of plea, the law states that "a defendant may not file a notice of appeal ... unless the sentence imposed is greater than the sentence set forth in such agreement," 18 U.S.C. § 3742(c)(1), and "the Government may not file a notice of appeal ... unless the sentence imposed is less than the sentence set forth in such agreement." 18 U.S.C. § 3742(c)(2). As the court in *Raynor* held, "if the government wishes to reduce sentencing appeals by defendants, Rule 11(e)(1)(C) is the proper vehicle, not forc-

ing defendants to blindly give up their statutory rights and requiring courts to abdicate their responsibilities under the Federal Rules and the Constitution." 989 F.Supp. at 48.

## V. *CONCLUSION*

Though Perez's waiver of his appeal rights is more limited than most, I hold that it is not acceptable insofar as it deprives him of the right to contest mistakes that I might make that are detrimental to his legitimate interests. Therefore, I strike the appeal waiver clause from his plea agreement, which I otherwise accept.

**SO ORDERED.**

### ORDER

Defendant Jose A. Perez ("Perez") has struck a plea agreement with the United States in which he agrees to plead guilty, under Fed.R.Crim.Pro. 11(e)(1)(B), and accepts, among other things, a limited waiver of his right to appeal and his right to bring a collateral challenge to his sentence. I find that the appeal and collateral challenge waiver is against public policy, and unenforceable. I strike the clause from Perez's plea agreement, which I otherwise accept.

**SO ORDERED.**