**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellant*, v. STEVEN DWIGHT HAMMOND, *Defendant-Appellee*. | No. 12-30337 D.C. No. 6:10-cr-60066-HO-1 |
| UNITED STATES OF AMERICA, *Plaintiff-Appellant*, v. DWIGHT LINCOLN HAMMOND, JR., *Defendant-Appellee*. | No. 12-30339 D.C. No. 6:10-cr-60066-HO-2 OPINION |

Appeal from the United States District Court
for the District of Oregon
Michael R. Hogan, District Judge, Presiding

Submitted December 3, 2013[*]
Seattle, Washington

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Filed February 7, 2014

Before: Richard C. Tallman and Carlos T. Bea, Circuit Judges, and Stephen J. Murphy, III, District Judge**

Opinion by Judge Murphy

**SUMMARY***

**Criminal Law**

On appeals by the government, the panel vacated sentences for maliciously damaging the real property of the United States by fire, in violation of 18 U.S.C. § 844(f)(1), and remanded for resentencing, in cases in which the defendants set fires on their ranch land that spread to public land.

The panel rejected the defendants' contention that the government waived its right to appeal the sentences in the plea agreements or otherwise failed to preserve its objection to the sentences. The panel explained that the principles governing the formation and interpretation of plea agreements leave no room for implied waivers.

---

** The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

*** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the district court illegally sentenced the defendants to terms of imprisonment less than the statutory minimum. The panel observed that although the district court attempted to justify lesser sentences on Eighth Amendment grounds, sentencing the defendants to five years of imprisonment would not have been unconstitutional.

## COUNSEL

Kelly A. Zusman, Assistant United States Attorney; S. Amanda Marshall, United States Attorney, District of Oregon, Portland, Oregon, for Plaintiff-Appellant.

Lawrence H. Matasar, Lawrence Matasar, P.C., Portland, Oregon, for Defendant-Appellee Steven Dwight Hammond.

Marc D. Blackman and Kendra M. Matthews, Ransom & Blackman, LLP, for Defendant-Appellee Dwight Lincoln Hammond, Jr.

## OPINION

MURPHY, District Judge:

The government appeals the sentences of Steven and Dwight Hammond, whom a jury convicted of maliciously damaging the real property of the United States by fire, in violation of 18 U.S.C. § 844(f)(1). The convictions carried minimum sentences of five years of imprisonment, but citing Eighth Amendment concerns, the district court sentenced Steven to only twelve months and one day of imprisonment and Dwight to only three months of imprisonment. Because

the sentences were illegal and the government did not waive its right to appeal them, we vacate the sentences and remand for resentencing.

## I.  Background

The Hammonds have long ranched private and public land in Eastern Oregon. Although they lease public land for grazing, the Hammonds are not permitted to burn it without prior authorization from the Bureau of Land Management. Government employees reminded Steven of this restriction in 1999 after he started a fire that escaped onto public land.

But in September 2001, the Hammonds again set a fire on their property that spread to nearby public land. Although the Hammonds claimed that the fire was designed to burn off invasive species on their property, a teenage relative of theirs testified that Steven had instructed him to drop lit matches on the ground so as to "light up the whole country on fire." And the teenager did just that. The resulting flames, which were eight to ten feet high, spread quickly and forced the teenager to shelter in a creek. The fire ultimately consumed 139 acres of public land and took the acreage out of production for two growing seasons.

In August 2006, a lightning storm kindled several fires near where the Hammonds grew their winter feed. Steven responded by attempting back burns near the boundary of his land. Although a burn ban was in effect, Steven did not seek a waiver. His fires burned about an acre of public land.

The government ultimately prosecuted the Hammonds on charges related to these and other fires. After trial, the jury deliberated several hours and returned a partial verdict. The

jury convicted Steven of two counts and Dwight of one count of maliciously damaging the real property of the United States by fire, in violation of 18 U.S.C. § 844(f)(1), based on their respective roles in the September 2001 and August 2006 fires. The jury also acquitted the Hammonds of some charges and failed to reach a verdict on others, including conspiracy charges brought against Steven and Dwight. The judge then instructed the jury to continue deliberating.

While the jury deliberated on the remaining charges, the parties reached an oral agreement and presented it to the court.[1] The government told the court that the Hammonds had agreed to "waive their appeal rights" — except with respect to ineffective assistance of counsel claims — "and accept the verdicts as they've been returned thus far by the jury." In return, the government promised to "recommend" that Steven's sentences run concurrently and agreed that the Hammonds "should remain released pending the court's sentencing decision."

The Hammonds agreed with the government's summary of the plea agreement. Their attorneys also added that the Hammonds wanted the "case to be over" and hoped to "bring th[e] matter to a close." According to the defense, the "idea" of the plea agreement was that the case would "be done with at the sentencing" and that the "parties would accept . . . the sentence that's imposed." The district court then accepted the plea agreement and dismissed the remaining charges.

---

[1] Although the Hammonds did not enter guilty pleas, the Hammonds agreed not to contest the jury verdicts in exchange for the government moving to dismiss other charges. The resulting posture is the same as that following a plea agreement. We thus will refer to the oral agreement here as a plea agreement and apply to it the law governing plea agreements.

At sentencing, the court found that the guidelines range for Steven was 8 to 14 months and for Dwight was 0 to 6 months. Yet their convictions carried five-year minimum terms of imprisonment. *See* 18 U.S.C. § 844(f)(1). The government accordingly recommended five-year sentences of imprisonment and argued — both in its sentencing memorandum and at sentencing — that the court lacked discretion to impose lesser sentences.

The court, however, concluded that the Eighth Amendment required deviation from the statutory minimum. Observing that Congress probably had not intended for the sentence to cover fires in "the wilderness," the court reasoned that five-year sentences would be grossly disproportionate to the severity of the Hammonds' offenses. The court then sentenced Steven to two concurrent terms of twelve months and one day of imprisonment and Dwight to three months of imprisonment.

## II. Standard of Review

We review both a waiver of appeal and the legality of a sentence de novo. *See United States v. Bibler*, 495 F.3d 621, 623 (9th Cir. 2007) (waiver of appeal); *United States v. Dunn*, 946 F.2d 615, 619 (9th Cir. 1991) (legality of a sentence).

## III.    Discussion

### A.  Waiver

A threshold issue is whether the government waived its right to appeal the Hammonds' sentences in the plea agreement or otherwise failed to preserve its objection. We find no grounds for dismissing the appeal.

The Hammonds first argue that the government waived its right to appeal in the plea agreement. Because a plea agreement is partly contractual in nature, we interpret it from the perspective of a reasonable defendant. *See United States v. De la Fuente*, 8 F.3d 1333, 1337–38 (9th Cir. 1993). But there is no ambiguity here to interpret. A reasonable defendant would expect that the absence of any statements on the government's right to appeal simply means that no waiver was contemplated. *See United States v. Anderson*, 921 F.2d 335, 337–38 (1st Cir. 1990).

The Hammonds respond by arguing that the statements of defense counsel show that an all-around waiver of appellate rights was the *sine qua non* of the plea agreement. The record, however, belies that assertion. The statements made by defense counsel just before the judge accepted the plea agreement underscore that all parties sought to resolve the case swiftly, but finality was not the only benefit supporting the plea agreement. Other benefits included favorable recommendations from the government and the dismissal of charges. We thus cannot reasonably read defense counsels' references to finality as meaning that no party could take an appeal.

Assuming then that the plea agreement is silent on the government's right of appeal, the Hammonds urge us to imply a waiver into the plea agreement. We have never before done so. But relying on *United States v. Guevara*, 941 F.2d 1299 (4th Cir. 1991), the Hammonds argue that construing the government's silence as an implied waiver will promote fairness and finality. We reject that position.

The principles governing the formation and interpretation of plea agreements leave no room for implied waivers.

Federal Rule of Criminal Procedure 11, not the common law of contracts, governs the making of plea agreements. *See United States v. Escamilla*, 975 F.2d 568, 571 n.3 (9th Cir. 1992); *United States v. Partida-Parra*, 859 F.2d 629, 634 (9th 1988). Although Rule 11 gives courts discretion to accept or reject a plea agreement, it does not authorize courts to remake a plea agreement or imply terms into one. *See United States v. Benchimol*, 471 U.S. 453, 455 (1985) (per curiam) ("Rule 11[] . . . speaks in terms of what the parties in fact agree to, and does not suggest that such implied-in-law terms as were read into this agreement by the Court of Appeals have any place under the rule."); *United States v. Stevens*, 548 F.2d 1360, 1362 (9th Cir. 1977) (observing that Congress rejected a version of Rule 11 that would have allowed a court to modify a plea agreement in favor of the defendant). We accordingly "enforce the literal terms" of a plea agreement, construing only ambiguous language in the defendant's favor. *United States v. Franco-Lopez*, 312 F.3d 984, 989 (9th Cir. 2002); *see also United States v. Johnson*, 187 F.3d 1129, 1134–35 (9th Cir. 1999). These principles preclude us from implying a waiver where none exists.

Moreover, nothing in the nature of plea agreements requires that each promise must be "matched against a mutual and 'similar' promise by the other side." *United States v. Hare*, 269 F.3d 859, 861 (7th Cir. 2001). To be sure, the idea behind a plea agreement is that each side waives certain rights to obtain some benefit. *See Partida-Parra*, 859 F.2d at 633. But there are ample reasons that a defendant might enter a plea agreement short of extinguishing the government's right to appeal, including the possibility of a lower sentence and the dismissal of other charges. *Hare*, 269 F.3d at 861; *cf. Brady v. United States*, 397 U.S. 742, 752 (1970) (listing possible reasons for entering a plea). For example, the

Hammonds negotiated for favorable recommendations from the government and the dismissal of charges. Such benefits are consideration enough to support a plea agreement. *See Hare*, 269 F.3d at 861–62.

Finally, contrary to the Hammonds' assertion, the record leaves no doubt that the government preserved the objection to the sentences that it raises on appeal. Nowhere did the government make a "straightforward" concession. *United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir. 1991). Nor did the government fail to give the district court an opportunity to address the argument it raises on appeal. *See United States v. Grissom*, 525 F.3d 691, 694–95 (9th Cir. 2008). In its sentencing memorandum and at sentencing, the government argued that the trial judge lacked discretion to deviate from the statutory minimum. The government thus preserved its objection, and we may hear its appeal.

## B.  Sentences

Turning now to the merits, we hold that the district court illegally sentenced the Hammonds to terms of imprisonment less than the statutory minimum. A minimum sentence mandated by statute is not a suggestion that courts have discretion to disregard. *See United States v. Wipf*, 620 F.3d 1168, 1169–70 (9th Cir. 2010). The court below was bound to sentence the Hammonds to five-year terms of imprisonment. *See* 18 U.S.C. 844(f)(1). Although the district court attempted to justify lesser sentences on Eighth Amendment grounds, sentencing the Hammonds to five years of imprisonment would not have been unconstitutional.

Rather than categorically challenge five-year sentences for arson, the Hammonds argue that the sentences would be

constitutionally disproportionate "under the unique facts and circumstances of this case." We assess this type of Eighth Amendment challenge by "compar[ing] the gravity of the offense to the severity of the sentence." *United States v. Williams*, 636 F.3d 1229, 1232 (9th Cir. 2011) (citing *Graham v. Florida*, 560 U.S. 48, 60 (2010)). Only in the "rare case in which this threshold comparison leads to an inference of gross disproportionality," do we then "compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Graham*, 560 U.S. at 60 (internal citations and quotation marks omitted).

Here, we need not progress beyond the first step. Congress has "broad authority" to determine the appropriate sentence for a crime and may justifiably consider arson, regardless of where it occurs, to be a serious crime. *Solem v. Helm*, 463 U.S. 277, 290 (1983). Even a fire in a remote area has the potential to spread to more populated areas, threaten local property and residents, or endanger the firefighters called to battle the blaze. The September 2001 fire here, which nearly burned a teenager and damaged grazing land, illustrates this very point.

Given the seriousness of arson, a five-year sentence is not grossly disproportionate to the offense. The Supreme Court has upheld far tougher sentences for less serious or, at the very least, comparable offenses. *See Lockyer v. Andrade*, 538 U.S. 63 (2003) (upholding a sentence of fifty years to life under California's three-strikes law for stealing nine videotapes); *Ewing v. California*, 538 U.S. 11 (2003) (upholding a sentence of twenty-five years to life under California's three-strikes law for the theft of three golf clubs);

*Hutto v. Davis*, 454 U.S. 370 (1982) (per curiam) (upholding a forty-year sentence for possession of nine ounces of marijuana with the intent to distribute); *Rummel v. Estelle*, 445 U.S. 263 (1980) (upholding a life sentence under Texas's recidivist statute for obtaining $120.75 by false pretenses). And we and other courts have done the same. *See, e.g.*, *United States v. Tolliver*, 730 F.3d 1216, 1230–32 (10th Cir. 2013) (upholding a 430-month sentence for using arson in the commission of a felony); *United States v. Major*, 676 F.3d 803, 812 (9th Cir. 2012) (upholding a 750-year sentence for offenses under 18 U.S.C. § 924(c)), *cert. denied*, 133 S. Ct. 280; *United States v. Meiners*, 485 F.3d 1211, 1212–13 (9th Cir. 2007) (per curiam) (upholding a fifteen-year sentence for advertising child pornography); *United States v. Uphoff*, 232 F.3d 624, 625–26 (8th Cir. 2000) (upholding a five-year sentence for arson of a building).

Because the district court erred by sentencing the Hammonds to terms of imprisonment less than the statutory minimum, we vacate the sentences and remand for resentencing in compliance with the law.

**VACATED AND REMANDED**.