**UNITED STATES of America,**
**Plaintiff,**

v.

**Richard Thayne MUTSCHLER,**
**Defendant.**

**CR14–328 TSZ**

United States District Court,
W.D. Washington,
at Seattle.

Signed January 7, 2016

Roscoe Jones, US Attorney's Office, Seattle, WA, for Plaintiff.

### ORDER

Thomas S. Zilly, United States District Judge

THIS MATTER has prompted the Court to question the now nationwide practice of routinely approving plea agree-

ments containing unilateral waivers of the right to appeal. Recent statistics indicate that, each year, roughly 97% of all federal convictions result from guilty pleas. *See Missouri v. Frye,* —— U.S. ——, 132 S.Ct. 1399, 1407, 182 L.Ed.2d 379 (2012); *see also* Dept. of Justice, Bureau of Justice Statistics, Sourcebook of Criminal Justice Statistics Online, Table 5.22.2010 (http://www.albany.edu/sourcebook/pdf/t5222010.pdf). Yet, in perhaps no other context involving such unequal bargaining positions have the courts so fully abdicated their responsibility for evaluating the conscionability of the parties' agreement. Federal prosecutors in virtually every district have been permitted to demand that defendants entering guilty pleas waive almost the entire panoply of rights, including the right to appeal.

Guilty pleas are generally negotiated outside the courtroom, between just the lawyers, without the defendant, and in the absence of any witness or recording mechanism. *See* Robert E. Scott & William J. Stuntz, *Plea Bargaining as Contract,* 101 YALE L.J. 1909, 1911 (1992). This "scandalously casual" process of "horse trading," which determines who goes to prison and for how long, is "not some adjunct to the criminal justice system; it *is* the criminal justice system." *Id.* at 1911–12 (emphasis in original). To ensure that this system does not become "so deregulated that the conditions essential to assuring basic fairness are undermined," *United States v. Perez,* 46 F.Supp.2d 59, 61 (D.Mass.1999), district courts should rigorously assess whether a unilateral waiver of appellate rights is acceptable in each case. *See United States v. Melancon,* 972 F.2d 566, 568 (5th Cir.1992) (observing that "a district court's refusal to accept such a waiver ... would be within its discretion"). In this particular case, the Court is persuaded that the Government's attempt to require defendant to waive his right to

**1334**

challenge future sentencing decisions is fundamentally unjust, and the Government's motion, docket no. 33, seeking reconsideration of the Court's oral ruling striking the appellate waiver in the Plea Agreement, docket no. 32, is DENIED.

### Background

By Indictment filed on November 5, 2014, docket no. 1, defendant Richard Thayne Mutschler was charged with four counts of mail fraud, pursuant to 18 U.S.C. § 1341, and four counts of wire fraud, pursuant to 18 U.S.C. § 1343. Each count of mail fraud occurred on a different date between December 24, 2009, and March 4, 2010, and involves a different check addressed to the Brookfield Condominium Association (the "Association"), for which defendant served as president. Each count of wire fraud occurred on a different date from November 10, 2009, through December 8, 2009, and involves a different online credit card payment from the Association's account. All eight counts of the Indictment are alleged to be part of the same scheme and artifice to defraud the Association.

The parties negotiated a Plea Agreement pursuant to which defendant entered a plea of guilty to the first count of mail fraud in exchange for the Government's agreement to dismiss all other counts in the Indictment and not to prosecute defen-

dant for any other offenses known at the time of the Plea Agreement. For purposes of calculating the applicable United States Sentencing Guidelines ("USSG") range, the parties agreed that the base offense level is 7, and that a 12–level increase is appropriate because the loss at issue exceeded $250,000.[1] See USSG § 2B1.1. This amount far exceeds the total of all checks and credit card payments described in the eight counts of the Indictment. See Indictment at 5–6 (docket no. 1) (indicating an aggregate of only $11,819.01). Under the terms of the Plea Agreement, the parties "are free to argue the application of any other provisions of the United States Sentencing Guidelines." Plea Agreement at ¶ 6 (docket no. 32). During the colloquy that accompanied defendant's change of plea before the undersigned, the Government indicated that it would likely seek a two-point increase for violation of a position of trust, a two-point increase for using a sophisticated scheme, and "another one or two enhancements" for reasons that had, at the moment, escaped the Assistant United States Attorney. Tr. (Oct. 19, 2015) at 14 (docket no. 31). The possibly 8–level increase proposed by the Government would more than double defendant's USSG range.[2]

■■■ "Although plea bargaining is a matter of criminal jurisprudence, a plea

---

1. As indicated in the Plea Agreement, the Court is not bound by the parties' stipulations concerning adjustments to the offense level. See Plea Agreement at ¶ 6 (docket no. 32). Moreover, although the Court must correctly determine the USSG range, the Court is not required to impose a sentence within such range. See United States v. Booker, 543 U.S. 220, 245, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (Sentencing Reform Act of 1984 "requires a sentencing court to consider Guidelines ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well" (citations omitted)); United States v. Cantrell, 433 F.3d 1269, 1280 (9th Cir.2006) (holding that "a material error by

the district court in calculating the applicable Guidelines range is grounds for resentencing").

2. An adjusted offense level of 16 (calculated from a base of 7, with a 12–level increase for the amount of loss, and a 3–point reduction for acceptance of responsibility, see USSG §§ 2B1.1(a)(1) & (b)(1)(G) and 3E1.1(b)) and a criminal history category of I results in a USSG range of 21–to–27 months. An 8–level increase to an adjusted offense level of 24 combined with the same criminal history category generates a range of 51–to–63 months. This pattern is repeated for higher criminal history categories.

bargain itself is contractual in nature and 'subject to contract-law standards.'" *United States v. Krasn*, 614 F.2d 1229, 1233 (9th Cir.1980) (quoting *United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir. 1979)). The terms of a plea agreement are interpreted according to "objective standards" and, in the event of a dispute, the "dispositive question" is what the parties "reasonably understood." *Arnett*, 628 F.2d at 1164. Plea agreements are contracts of adhesion, and must be strictly construed against the Government. *See Standard Oil Co. of Cal. v. Perkins*, 347 F.2d 379, 383 n. 5 (9th Cir.1965) (describing an adhesion contract as a standard form "prepared by one party and submitted to the other on a 'take it or leave it' basis"); *see also United States v. Mezzanatto*, 513 U.S. 196, 216, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995) (Souter, J., dissenting) ("As the Government conceded during oral argument, defendants are generally in no position to challenge demands for these waivers, and the use of waiver provisions as contracts of adhesion has become accepted practice."); *All Pac. Trading, Inc. v. Vessel M/V Hanjin Yosu*, 7 F.3d 1427, 1431 (9th Cir.1993) (observing that contracts of adhesion are strictly construed against the drafter).

As presented to the Court, the Plea Agreement indicated that defendant waived the right to challenge the Court's calculation of the USSG range. *See* Plea Agreement at ¶ 14(a) (stricken) (docket no. 32). Paragraph 14(a) stated that defendant waived:

> to the full extent of the law ... any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court,

provided such sentence is within or below the USSG range. *Id.* This provision is asymmetric, requiring defendant to waive appellate rights, but leaving the Government fully able to seek review if it does not agree with the Court's calculation of the USSG range or if the Court imposes a sentence below the guideline range. *See* 18 U.S.C. §§ 3742(b)(2) & (3). Paragraph 14(a) is "standard language," Tr. (Oct. 19, 2015) at 16:23 (docket no. 31), and the unilateral waiver at issue was neither specifically negotiated nor, in any real sense, optional.

Before accepting defendant's plea of guilty to Count I of the Indictment, the Court struck Paragraph 14(a) of the Plea Agreement, and set a ten-day deadline for the Government to object. Tr. (Oct. 19, 2015) at 16–20 (docket no. 31). The Government timely set forth its objections in the motion for reconsideration, docket no. 33, now before the Court. Defendant acquiesced in the motion in an effort to forestall the Government from trying to rescind the Plea Agreement. *See* Resp. (docket no. 34). As a result, the Court has not received the benefit of defendant's (or his attorney's) views. Thus, despite the Court's refusal to accept the unilateral waiver of appellate rights, the waiver has done its job of muting the party with the most at stake and inhibiting the development of balanced jurisprudence.

### Discussion

#### A. Authority to Strike Paragraph 14(a)

Striking a presentence waiver of appellate rights is not without precedent. *See Perez*, 46 F.Supp.2d at 63; *see also United States v. Teeter*, 257 F.3d 14, 27 (1st Cir. 2001) (severing the appeal waiver because the district court failed to make an adequate inquiry during the plea colloquy and orally contradicted its terms); *cf. United States v. Banos–Mejia*, 588 Fed.Appx. 522 (9th Cir.2014) (refusing to enforce an ambiguous waiver of the right to appeal); *United States v. Gonzales–Garcia*, 541 Fed.Appx. 764 (9th Cir.2013) (same); *United States v. Baltazar–Neri*, 540 Fed. Appx. 630 (9th Cir.2013) (same); *United*

*States v. Aguilar–Balbuena,* 475 Fed. Appx. 222 (9th Cir.2012) (same). These decisions are consistent with contract principles allowing courts to refuse to enforce, or to strike, terms that are unconscionable or against public policy. *See United States v. Ready,* 82 F.3d 551, 559 (2d Cir. 1996) ("courts may apply general fairness principles to invalidate particular terms of a plea agreement" (citing Restatement (Second) of Contracts § 178 (1981) and U.C.C. § 2–302(1) (1994))), *superseded on other grounds* by Fed.R.Crim.P. 11(b)(1)(N). The Government cites no authority suggesting that the Court lacks such inherent power.

Rather, in challenging the Court's ruling, the Government refers to the admonition in Federal Rule of Criminal Procedure 11(c)(1) that the Court "must not participate in [plea] discussions." The Government cites *United States v. Hammond,* 742 F.3d 880 (9th Cir.2014), *cert. denied,* —— U.S. ——, 135 S.Ct. 1545, 191 L.Ed.2d 636 (2015), for the proposition that Rule 11 gives courts "discretion to accept or reject a plea agreement," but not to "remake a plea agreement or imply terms into one." *Id.* at 883. The Government's reliance on *Hammond* is misplaced. In *Hammond,* the defendants argued that *the Government* had waived its right to appeal the sentences imposed by the district court. The plea agreement contained no explicit waiver by the Government, and the Ninth Circuit concluded that it was itself precluded from "implying a waiver where none exists." *Id.* But see *United States v. Guevara,* 941 F.2d 1299 (4th Cir. 1991) (holding that, despite its unilateral wording, the waiver provision at issue also operated to preclude the Government from appealing). No issue was raised in *Ham-*

*mond* concerning the district court's role under Rule 11.[3]

◼ Rule 11(c) is primarily aimed at eliminating judicial pressure in plea discussions. *See United States v. Kyle,* 734 F.3d 956, 963 (9th Cir.2013); *United States v. Bruce,* 976 F.2d 552, 556 (9th Cir.1992). Its central focus is the defendant's *"perception* of the judge." *Bruce,* 976 F.2d at 556 (emphasis in original, quoting *United States v. Werker,* 535 F.2d 198, 202 (2d Cir.1976)). A district judge who encourages a defendant to plead guilty, and might therefore be viewed as an advocate (or worse, as an adversary), rather than a neutral arbiter, creates an unacceptable risk that the defendant will be coerced into entering a guilty plea. *See id.* at 556–57. Similarly, a district judge who commits to imposing a "sentence of at least a certain level of severity," in the event the case proceeds to trial, *see Kyle,* 734 F.3d at 965, casts doubt on the voluntariness of any subsequent guilty plea.

The concerns underlying Rule 11(c) are not at issue here. The Court has not expressed any opinion concerning the bargain explicitly negotiated between the parties, namely that defendant would plead guilty to one count in exchange for the dismissal of seven other counts and that the parties would present at sentencing their respective views concerning the applicable USSG range and appropriate term of incarceration. The Court has neither encouraged nor discouraged defendant from entering a guilty plea, nor indicated what sentence would be imposed in the event of either a guilty plea or a trial. Rather, the Court raised concerns about standard language that the Government includes in virtually every plea agreement and that defendants throughout this dis-

---

**3.** The Government has not mentioned, but the Court recognizes, that the Fifth Circuit believes Rule 11 precludes district courts from accepting plea agreements while striking any

appeal waiver provisions. *United States v. Serrano–Lara,* 698 F.3d 841 (5th Cir.2012). *Serrano–Lara* has not been adopted by any other circuit, and is not binding on this Court.

trict and across the country have no choice but to accept. The Court's decision to strike the unilateral appellate waiver from the Plea Agreement could not have had any coercive effect on defendant or unduly influenced him to accept the Government's plea offer.

■ Moreover, notwithstanding Rule 11(c)'s ban on the Court's involvement in plea discussions, the Ninth Circuit has recognized that the Court may, via "unambiguous" advice of a right to appeal, made "without qualification," invalidate a defendant's prior written waiver of such right. *See United States v. Arias–Espinosa,* 704 F.3d 616, 619 (9th Cir.2012); *United States v. Buchanan,* 59 F.3d 914 (9th Cir.1995); *see also United States v. Scott,* 626 Fed. Appx. 722, 724, 2015 WL 5718594 at *1 (9th Cir. Sep. 30, 2015). In *Buchanan,* the Ninth Circuit observed that "[l]itigants need to be able to trust the oral pronouncements of district court judges," and held that the district court's misstatements on two occasions (once during a hearing concerning whether the defendant should be allowed to withdraw his guilty plea, and once while imposing the sentence at issue) operated to render unenforceable the plea agreement's waiver of the right to appeal. 59 F.3d at 917–18. Given that the Court could vitiate a written waiver simply by informing a defendant that he or she has a right to appeal, the Court can fathom no reason why it would be inhibited by Rule 11 from accomplishing the same result by striking a standard provision of a plea agreement that was not specifically negotiated and that offends the basic principles of justice and fair play.

## B. *Unilateral Waivers of Appellate Rights*

Much has been written about appellate waivers. *See, e.g.,* Kevin Bennardo, *Post–Sentencing Appellate Waivers,* 48 U. MICH. J.L. REFORM 347 (2015); Robert K. Calhoun, *Waiver of the Right to Appeal,* 23 HASTINGS CONST. L.Q. 127 (1995); Kristine Cordier Karnezis, Annotation, *Validity and Effect of Criminal Defendant's Express Waiver of Right to Appeal as Part of Negotiated Plea Agreement,* 89 A.L.R.3d 864 (1979); *see also* Andrew Dean, Comment, *Challenging Appeal Waivers,* 61 BUFF. L. REV. 1191 (2013). Almost all of the circuits have concluded that, absent some egregious circumstance or a miscarriage of justice, a unilateral waiver of the right to appeal is enforceable, and that a miscalculation of the USSG range does not constitute a basis for invalidating such waiver. *See United States v. Mathews,* 534 Fed.Appx. 418 (6th Cir.2013); *United States v. Chandler,* 534 F.3d 45 (1st Cir. 2008); *United States v. Hahn,* 359 F.3d 1315 (10th Cir.2004)[4]; *United States v. Andis,* 333 F.3d 886 (8th Cir.2003); *United States v. Khattak,* 273 F.3d 557 (3d Cir. 2001); *United States v. Brown,* 232 F.3d 399 (4th Cir.2000); *United States v. Feichtinger,* 105 F.3d 1188 (7th Cir.1997); *United States v. Bolinger,* 940 F.2d 478 (9th Cir.1991).[5]

---

4. In *Hahn,* the Tenth Circuit limited the grounds for disregarding appellate waivers to situations in which (i) the district court relied on an impermissible factor like race, (ii) counsel was ineffective in connection with the negotiation of the waiver, (iii) the sentence imposed exceeded the statutory maximum, or (iv) the waiver was "otherwise unlawful." 359 F.3d at 1327.

5. In its most recent pronouncement on the subject, despite the consensus among other circuits that "appellate courts must remain free to grant relief" from a waiver when necessary to prevent a miscarriage of justice, *e.g., Teeter,* 257 F.3d at 25, the Ninth Circuit did not even acknowledge any miscarriage of justice exception. *See United States v. Medina–Carrasco,* 806 F.3d 1205, 1209 (9th Cir.2015) (indicating that waivers of appellate rights are enforceable if "the language of the waiver encompasses [the] right to appeal on the grounds raised" and "the waiver is knowingly

The circuit courts, however, approach appellate waivers from a completely different perspective than district courts. At the appellate level, the bargain has already been struck and memorialized, and the issue on review is merely whether the defendant should be bound by the terms of the written agreement. In contrast, when the matter of an appellate waiver is before a district court, the plea agreement is still tentative, and the decision to be made is whether to accept the terms of the bargain proposed by the parties. The views of the various circuits concerning the enforceability of an already accepted waiver provide little guidance on the question of whether a waiver of appellate rights should be accepted in the first place. *See Melancon,* 972 F.2d at 568 ("Nothing in this opinion ... should be interpreted as indicating that a district court is not free to determine whether plea waivers of the right to appeal are unacceptable. We recognize that there may be sound policy reasons for refusing to accept such waivers, and that district courts might disagree with the policy choice made by the court in this case to [enforce] a plea agreement appeal waiver."). The Court must therefore examine anew the arguments in favor of and against unilateral waivers of appellate rights, keeping in mind that "[j]ust because other circuits [or courts] have said a ruling is cut from the cloth of reason does

not always mean that it is." *Id.* at 571 (Parker, D.J., concurring specially).

### 1. *Prospective Waivers Are Inherently Unknowing*

In enforcing unilateral waivers of appellate rights, the various circuits have reasoned that, because a defendant may waive constitutional rights, he or she may also waive the statutory right to appeal a sentence. *See Andis,* 333 F.3d at 889 ("the right to appeal is not a constitutional right but rather 'purely a creature of statute' "); *Khattak,* 273 F.3d at 561 ("The ability to waive statutory rights, like those provided in 18 U.S.C. § 3742, logically flows from the ability to waive constitutional rights."); *Teeter,* 257 F.3d at 21–22 ("the idea of permitting presentence waivers of appellate rights seems relatively tame because the right to appeal in a criminal case is not of constitutional magnitude"); *Nguyen,* 235 F.3d at 1182 (noting that the right to appeal "is statutory, rather than constitutional, in nature"). This analysis, which focuses solely on the sources of the rights being relinquished, ignores the important distinction between contemporaneous and prospective waivers.

Unlike a contemporaneous waiver (for example, the waiver of the right to remain silent that occurs when a defendant speaks, or the waiver of the right to have a jury determine guilt that occurs when a defendant admits guilt [6]), a prospective

---

and voluntarily made"); *see also United States v. Nguyen,* 235 F.3d 1179, 1182 (9th Cir.2000) ("The *sole test* of a waiver's validity is whether it was made knowingly and voluntarily." (emphasis added)); *United States v. Martinez,* 143 F.3d 1266, 1270–71 (9th Cir.1998). *But see United States v. Harris,* 628 F.3d 1203, 1205 (9th Cir.2011) (recognizing that appellate courts have subject matter jurisdiction despite a defendant's knowing and voluntary execution of an appellate waiver, but will not exercise such jurisdiction "[a]bsent some miscarriage of justice"). The two-part standard set forth in *Medina–Carrasco* leaves no room for manifest error correction, even with regard to sentences that are the product of

invidious discrimination, are within the USSG range but exceed the statutory maximum, or are based on purely mathematical mistakes. *Compare United States v. Rivera,* 143 Fed.Appx. 622, 623 (5th Cir.2005) (enumerating arithmetic error in guideline calculations as a ground for disregarding an appeal waiver).

**6.** Contrary to the views of the First Circuit, a waiver of the right to jury trial does not "pertain to future events." *See Teeter,* 257 F.3d at 21 (cited in *Hahn,* 359 F.3d at 1326, and *Khattak,* 273 F.3d at 561). The right being waived when a defendant admits guilt is the present right to demand a trial. The

waiver raises concerns about the facts known to the defendant at the time the waiver is executed. *Melancon,* 972 F.2d at 571–72 (Parker, D.J., concurring specially); *see Medina–Carrasco,* 806 F.3d at 1212 (Friedman, D.J., dissenting) ("Sentencing ... does not occur contemporaneously with the plea and waiver. It is a future event, and the mistakes from which one might have reason to appeal have not yet occurred at the time a defendant waives the right to appeal...."). Generally, when a guilty plea is entered and the right to appeal the ensuing sentence is waived, the scope of the record that will be considered at sentencing has not yet been defined, the presentence report has not yet been prepared, the applicable USSG range has not yet been calculated, and the sentence has not yet been imposed. Given the quantum of information usually unavailable at the time of the plea, a prospective waiver of appellate rights might often be "unknowing and unintelligent." *Medina–Carraso,* 806 F.3d at 1212 (Friedman, D.J., dissenting); *see Melancon,* 972 F.2d at 571–73 (Parker, D.J., concurring specially); *Perez,* 46 F.Supp.2d at 66–67; *United States v. Johnson,* 992 F.Supp. 437, 439 (D.D.C.1997) (refusing to accept a plea containing a waiver of the right to appeal); *United States v. Raynor,* 989 F.Supp. 43, 48 (D.D.C.1997) (same).

Recognizing the dichotomy between contemporaneous and prospective waivers, the District of Columbia Circuit has held that a defendant who waives the right to appeal a sentence does not thereby agree "to accept any defect or error that may be thrust upon him by either an ineffective attorney or an errant sentencing court." *United States v. Guillen,* 561 F.3d 527, 530 (D.C.Cir.2009). According to *Guillen,* an appellate waiver "relieves neither [the defendant's] attorney nor the district court of

their obligations to satisfy applicable constitutional requirements." *Id.* The District of Columbia Circuit has indicated that it will not enforce a waiver of the right to appeal "if the sentencing court's failure in some material way to follow a prescribed sentencing procedure results in a miscarriage of justice." *Id.* at 531. This pronouncement resonates with the view that the provisions of 18 U.S.C. § 3742 do not merely confer a right to appeal, but rather impose limitations on judicial authority, which cannot be "waived" by the parties. *See Melancon,* 972 F.2d at 573 (Parker, D.J., concurring specially); *see also Bolinger,* 940 F.2d at 483 (D.W. Nelson, C.J., dissenting in part) (observing that, because "a salient purpose of the Guidelines is to reduce sentencing disparity and to create uniformity," an appeal asserting that the district court "misapplied the Guidelines ... should not be barred by waiver").

### 2. *Unilateral Waivers Have Distortive Effects*

Although the Court would not intentionally impose an improper sentence, the Court is not infallible and, in the course of formulating a sentence, the Court is often faced with issues on which reasonable minds can differ. The criminal justice system is not improved by insulating from review either simple miscalculations or novel questions of law. Moreover, in the wake of *Booker,* which rendered the sentencing guidelines merely advisory, *see* 543 U.S. at 245, 125 S.Ct. 738, we have returned to a sentencing regime with the potential to generate the types of unwarranted disparities that Congress attempted to eradicate in enacting the Sentencing Reform Act of 1984. Only appellate courts have the vantage necessary to assess whether sentences are being imposed in a

right to force the Government to prove its case does not become prospective merely be-

cause the Government might not be able to do so.

uniform manner within a circuit or across the country; however, the habitual acceptance and enforcement of unilateral waivers of appellate rights precludes such analysis, and is likely to lead to a wide range of sentences, despite similarities in offense levels and criminal histories. This "systemic distortion" is further intensified by the "asymmetry" in appellate rights, which allows the Government to seek harsher sentences on review, and results in jurisprudence necessarily "skewed" toward restricting the ways in which district courts may show leniency. *See Perez,* 46 F.Supp.2d at 69; *Raynor,* 989 F.Supp. at 46.

### 3. *Appellate Waivers Are Unnecessary*

Any suggestion that unilateral waivers of the right to appeal promote finality is disinguous. *Perez,* 46 F.Supp.2d at 69; *Raynor,* 989 F.Supp. at 48 ("If the purpose of the waiver ... is to eliminate frivolous appeals, ... the government is engaging in overkill."). Finality is not secured simply because only the Government, and not the defendant, is entitled to appeal. *Guevara,* 941 F.2d at 1299. Moreover, to the extent the Government's motive is merely to reduce the burden of appellate and collateral litigation on sentencing issues, the avenue for achieving such finality is explicitly contemplated in Rule 11(c)(1)(C), pursuant to which the Government may agree to a specific USSG range and bind both the defendant and the Court. *See* Fed. R.Crim.P. 11(c)(1)(C); *Perez,* 46 F.Supp.2d at 71–72; *Raynor,* 989 F.Supp. at 48 (citing 18 U.S.C. § 3742(c) and former Rule 11(e)(1)(C) [now Rule 11(c)(1)(C) ] ). Because a defendant's ability to appeal from a sentence imposed pursuant to a Rule 11(c)(1)(C) plea agreement is statutorily restricted, an appellate waiver is simply cumulative and unnecessary.

### 4. *Unilateral Appellate Waiver is Unacceptable in This Case*

■ If the slate was clean on the subject, the Court would suggest that unilateral waivers of appellate rights should never be allowed because they are fundamentally unfair and in derogation of the principles underlying 18 U.S.C. § 3742. The Court, however, writes amidst a crowd of circuit judges who are satisfied that, in the abstract, defendants are able to voluntarily and knowingly waive their rights to appeal a future decision. These views have tempered the Court's own, and the Court acknowledges that, in some cases, a unilateral waiver of appellate rights might be acceptable. This case, however, is not among them.

In this matter, the Government has orally advised that it will seek as much as an 8–point increase to the adjusted offense level, which would more than double defendant's USSG range. With regard to "one or two" of the enhancements, Tr. (Oct. 19, 2015) at 14 (docket no. 31), the Government was unable at the time of defendant's guilty plea to even state the grounds for its anticipated position. Thus, the Court is not satisfied that defendant (or his lawyer) could intelligently evaluate the risks associated with future rulings about the applicable USSG range.

Moreover, the Court is not convinced that the consideration offered by the Government in exchange for defendant's guilty plea, namely dismissal of Counts II through VIII and an agreement not to pursue other charges, supports the draconian waiver that the Government has attempted to extract from defendant. Even if the Government were to prevail at trial on all currently charged and uncharged offenses, the 12–level increase outlined in the Plea Agreement, which is based on the amount of the loss, would not change; the aggregate of all funds defendant unlawful-

ly obtained is alleged to be in the neighborhood of $250,000, and did not exceed $550,000, which is the threshold for any additional points related to the quantum of loss. *See* USSG §§ 2B1.1(b)(1)(G) & (H); Indictment at ¶¶ 4, 6 & 7 (docket no. 1). Thus, this case does not involve the type of "charge bargain" concerning which the Tenth Circuit has cautioned "hesitancy before second-guessing prosecutorial choices." *United States v. Vanderwerff*, 788 F.3d 1266, 1272 (10th Cir.2015).[7]

To be clear, the Court might be more inclined to accept a waiver of appellate rights if it was explicitly mutual, or if the Ninth Circuit (following the Fourth Circuit's lead, *see Guevara*, 941 F.2d at 1299–

1300) interpreted one-sided provisions as bilateral.[8] Given the current circumstances, however, the Court cannot, as a matter of conscience, conclude that defendant would be "voluntarily, knowingly, and intelligently" waiving his right to appeal the sentence that is to be determined at a later date in response to one or more arguments that the Government cannot currently articulate. The Court is unwilling, in the type of situation that exists in this case, to insulate its future sentencing decision from review, and hereby exercises its discretion not to accept a unilateral waiver of the right to appeal the, as yet, unknown sentence. To rule otherwise would be a "miscarriage of justice."

7. In *Vanderwerff*, the district court rejected the initial plea agreement because it contained an appellate waiver. 788 F.3d at 1267–70. The initial plea bargain called for the defendant to plead guilty to the one count of the indictment in exchange for the dismissal of the other two counts, which eliminated any statutory minimum sentence and lowered the maximum period of imprisonment to ten years. *United States v. Vanderwerff*, 2012 WL 2514933 at *5 n. 5 (D.Colo. June 28, 2012), *rev'd*, 788 F.3d 1266 (10th Cir.2015). After the district court refused to accept the initial plea agreement, the parties negotiated a new plea deal pursuant to which the defendant pleaded guilty to a different count of the indictment and faced a mandatory minimum sentence of five years and maximum term of twenty years. 788 F.3d at 1270. The Tenth Circuit concluded that the district court's decision not to accept the initial plea deal was inconsistent with the "charge bargain" nature of the parties' agreement, and "effectively crippled" or "failed to accord proper deference" to the Government's "exercise of prosecutorial discretion." *Id.* at 1278. Unlike in *Vanderwerff*, in this case, the Court has not flatly rejected the Plea Agreement, but rather has merely stricken the appellate waiver provision, and the "charge bargain" at issue affects neither the applicable USSG range nor the minimum or maximum sentences.

8. If the appellate waiver at issue operated against both the Government and defendant,

the Court might find more convincing the public policy arguments generally asserted in favor of plea agreements. *See United States v. Navarro–Botello*, 912 F.2d 318, 321–22 (9th Cir.1990). The public is undoubtedly served when the Government does not expend resources either defending or challenging the sentences imposed on defendants who have entered guilty pleas, and a defendant's admission of guilt offers some satisfaction to the public that the Government's charges had a basis in fact. *See id.* at 322. The public's gain, however, is smaller when the Government preserves its right to appeal, and the modicum of finality purchased with unilateral appellate waivers must be weighed against the cost of erroneously long sentences to both the public and the individual defendants. The public is perhaps better served by keeping inviolate the mechanisms aimed at ensuring a defendant receives fair punishment, namely effective assistance of counsel, an impartial sentencing tribunal, and meaningful oversight to correct either deficiencies in attorney performance or judicial errors that result in prejudice. *See Perez*, 46 F.Supp.2d at 67–68 ("We set apart the rights to counsel and to appeal ineffective assistance of counsel as things the government cannot seek in a plea bargain because these are necessary to preserve the essence of the protections the defendant gives up, namely the protections which ensure that the defendant is treated fairly by the criminal justice system. I hold that the right to appeal judicial mistakes is of the same nature.").

### Conclusion

For the foregoing reasons, the Government's motion for reconsideration, docket no. 33, is DENIED. Paragraph 14(a) of the Plea Agreement remains stricken.

IT IS SO ORDERED.

The Clerk is DIRECTED to send a copy of this Order to all counsel of record.